# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROLANDO RAMOS-CARDONA | : | |
|     1781 Reading Blvd | : | |
|     Wyomissing, PA  19610 | : | |
|           Plaintiff | : | |
| | : | |
| vs. | : | Civil Action No. |
| | : | |
| | : | |
| UNITED STATES DEPARTMENT  OF | : | |
| EDUCATION | : | |
|     400 Maryland Ave., S.W. | : | |
|     Washington, D.C.  20202 | : | |
| | : | |
|     and | : | |
| | : | |
| DR. MIGUEL CARDONA*, in his official* | : | |
| *capacity as Secretary of Education* | : | |
|     400 Maryland Ave., S.W. | : | |
|     Washington, D.C.  20202 | : | |
|           Defendants | : | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Rolando Ramos-Cardona  (the "Plaintiff") -  complains and alleges as follows against Defendant United States Department of Education (the "Department" or "ED"), and Defendant Dr. Miguel Cardona., in his official capacity as Secretary of Education:

## SUMMARY OF ACTION

1.      This lawsuit seeks to hold the Department of Education accountable for promises it made to individuals who have dedicated their lives to public service.  Having entered their professions with substantial educational debt, these individuals chose not to pursue higher paying jobs and to instead serve the public, relying on the Department's promise: Make payments on

your federal loans while working in your public service jobs and, after ten years, the Public

Service Loan Forgiveness ("PSLF") program will forgive your remaining debt.

2.      Chapter 13 Bankruptcy Trustees administer hundreds of thousands of bankruptcy

cases annually throughout America in accordance with the United States Bankruptcy Code, 11

U.S.C. §§ 101 et seq, Federal Rules of Bankruptcy Procedure and Local Court Rules.

3.      Chapter 13 Bankruptcy Trustee operations are public service organizations that

are not-for-profit, provide public legal services and have a portion of their expenses paid for by

the Federal Government.

4.      Congress enacted the PSLF program in 2007. The next year, the Department

adopted a regulation implementing the program, which is administered by the Secretary of

Education. *See* 34 C.F.R. § 685.219.  The program provides incentives for graduates to pursue

full-time public service careers by providing that a borrower-graduate's student loan debt

balance will be forgiven if the borrower complies with rigorous requirements. Specifically, a

borrower's loans will be forgiven only after he makes timely loan payments for ten years while

working full-time in a public service job.

5.      The PSLF program broadly offers loan forgiveness to many public service

employees, including those providing "public interest law services," among a variety of other

categories. Id. at §685.219(b)

6.      The Department has denied Plaintiff and other employees of other Chapter 13

Bankruptcy Trustee offices applications for PSLF on the basis that their employers are "for

profit" which is a false conclusion.

7.     However, employees of thirteen different Chapter 13 Bankruptcy Trustee offices have been granted PSLF and their employees have been deemed qualified.

8.     All Standing Chapter 13 Trustee operations operate the same under the same guidelines and oversight of the United States Trustee Office.

9.     The Department's arbitrary refusal to designate some Chapter 13 Bankruptcy Trustees as qualified employers, while similar situated Chapter 13 Trustees are approved violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06 because the Department's interpretation of the PSLF eligibility criteria is incompatible with the enabling statute and the relevant regulation.

10.    The Department's actions are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  This Court should declare that they violate the APA and constitute a violation of due process, and it should order the Department to strictly comply with the Act and remedy the harm to the Plaintiff.

## THE PARTIES

11.    Rolando Ramos-Cardona, who resides in Wyomissing, Berks County, Pennsylvania is a full time employee of Scott F. Waterman, Chapter 13 Bankruptcy Trustee and currently serves as one of two trial attorneys in the office.

12.    The United States Department of Education is a federal agency headquartered in the District of Columbia with its principal office located at 400 Maryland Avenue, SW, Washington, D.C. 20202.

13.    Dr. Miguel Cardona is sued solely in his official capacity as Secretary of Education, in which capacity he has the ultimate responsibility for the activities of the Department, including the actions complained of herein.  Secretary Cardona maintains an office at 400 Maryland Avenue, SW, Washington, D.C. 20202.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action because it is a case arising under federal law, *see* 28 U.S.C. § 1331, and because it is a case to compel federal agencies and officers to perform their duty, *see* 28 U.S.C. § 1361.

15.     The relief requested herein is authorized by the APA, 5 U.S.C. §§ 702-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the All Writs Act, 28 U.S.C. § 1651.

16.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because this is the district where Plaintiff resides.

17.     Defendants have waived sovereign immunity as to the relief requested in this matter pursuant to 5 U.S.C. § 702.  *See Trudeau v. FTC*, 456 F.3d 178, 187 (D.C. Cir. 2006).

18.     The Department's decision not to certify the Plaintiff's application for PSLF eligibility on the basis that his Chapter 13 Bankruptcy Trustee employer's office is not a qualifying employer under PSLF, constitutes a final agency action.  *See* 34 C.F.R. § 685.219(e)(3).

19.     No further exhaustion of remedies for the issues raised by this lawsuit is required by 20 U.S.C. § 1087e(m), the Consolidated Appropriations Act of 2018, Pub., L. No. 115-141, § 315, 132 Stat. 348, 752–53, or applicable ED regulations, as the Plaintiff received a determination of ineligibility for participation in the PSLF Program.

20.     Defendants' actions give rise to an actual controversy for purposes of the Declaratory Judgment Act and Article III of the U.S. Constitution.

21.     Plaintiff has no adequate alternative legal remedy.

## GENERAL ALLEGATIONS

**I**      **Congress Created the Public Service Loan Forgiveness Program to Provide Financial Support for Borrowers Pursuing a Broad Range of Public Interest Careers.**

22.     Congress created the PSLF program when it passed the College Cost Reduction and Access Act of 2007 ("CCRAA" or the "Act"), signed into law by President George W. Bush on September 27, 2007.  The provisions relevant to the PSLF program are codified at 20 U.S.C. § 1087e(m).

23.     Those provisions mandate that the Secretary of Education shall cancel the remaining principal and interest due on any Federal Direct Loan (including Direct Subsidized Loans, Direct Unsubsidized Loans, Direct PLUS Loans, and Direct Consolidated Loans) where:

a.      The loan is not in default;

b.      The borrower has made 120 monthly payments since October 1, 2007 on an eligible Federal Direct Loan;

c.      The borrower has been employed in a "public service job" at the time he made each of the 120 monthly payments; and

d.      The borrower is employed full-time in a "public service job" at the time of the forgiveness. 20 U.S.C. §1087e(m)(1).

24.     The Act's definition of public service jobs is broad.  The Act defines "public service job" to include a full-time job in a number of different areas, including:…. "public interest law services." 20 U.S.C. §1087e(m)(3)(B).

25.     The Act does not further define the terms "public interest law services."  The Act does not require that the provision of these services be the "primary purpose" of an organization as a condition for eligibility.  Indeed, the Act contains no other conditions that narrow the definition of the basis for eligibility.

26.     The purpose of the PSLF program is to encourage individuals to enter and continue working in public service. 34 C.F.R. §685.219(a)

27.     In establishing the PSLF program, Congress ensured that those pursuing many public service careers would not need to worry that their salaries would be insufficient to cover their loan repayments along with their living expenses.  It was intended to encourage individuals to enter and continue in full-time public service employment.

28.     The PSLF program provides public service employers an important tool for recruiting.  Many of these employers, as governmental entities and not for profit organizations, cannot otherwise attract law school graduates with high debt loads because these organizations are in a position to offer only relatively modest salaries.

## II.     Consistent with Congressional Intent, the Department's Implementing Regulation Established Broad Categories of Eligibility.

29.     In October 2008, the Department promulgated a regulation to implement the PSLF program, codified at 34 C.F.R. § 685.219.  It followed the mandate from Congress to offer loan forgiveness to individuals in a broad range of public interest jobs.

30.     The Department decided not to determine borrowers' eligibility by enumerating in the regulation the specific categories of legal jobs that would satisfy the term "public service job."

31.     The Department took account of the view that an enumerated list of jobs would limit the definition of "public service organization" in a manner inconsistent with the intent of Congress.

32.     Instead, the regulation defines the term "public interest law" by reference to the employer.  "Public interest law" refers to "legal services provided by a public service

organization" when those activities "are funded in whole or in part by a local, State, Federal, or

Tribal government." 34 C.F.R. § 685.219(b)

33.     In turn, a "public service organization" is defined in the regulation as:

(1)     **A Federal**, State, local, or Tribal government organization, agency, or **entity**;
(2)     A public child or family service agency;
(3)     A non-profit organization under section 501(c)(3) of the Internal Revenue Code that [meets certain requirements];
(4)     A Tribal college or university; or
(5)     **A private organization that—**
(i)     **Provides . . . public services [including] public interest law services** [or] public service for individuals with disabilities and the elderly, [or] public education . . .; and
(ii)    Is not a business organized for profit, a labor union, a partisan political organization, or an organization engaged in religious activities, unless the qualifying activities are unrelated to religious instruction, worship services, or any form of proselytizing.


Id. [emphasis added]

34.     The regulation also does not include any other definitions or requirements that

further narrow the definitions of "public interest law services."


**III.    The PSLF Program**

35.     Following graduation, a borrower could choose to participate in the PSLF

program by starting to make loan payments.

36.     Any monthly payment made after October 1, 2007 counts toward a borrower's

120 PSLF-eligible payments if the payment meets the requirements of the PSLF program.

37.     The required 120 monthly payments must be made under one or more Direct

Loan Program repayment plans:  Revised Pay As You Earn Repayment Plan ("REPAYE Plan"),

Pay As You Earn Repayment Plan ("PAYE Plan"), Income-Based Repayment Plan ("IBR

Plan"), Income-Contingent Repayment Plan ("ICR Plan"), 10-year Standard Repayment Plan, or

any other Direct Loan Program repayment plan where the payments are at least equal to the monthly payment amount that would have been required under the 10-year Standard Repayment Plan.

38.     To be eligible for PSLF, a borrower must be employed full-time at a public service organization as "full-time" is defined by the employer, provided that this definition equates to at least an annual average of 30 hours per week.  Employment in more than one qualifying part-time job that amounts to a combined average of at least 30 hours per week also satisfies the "full-time" requirement.

39.     Eligible PSLF program borrowers need not make the required 120 monthly payments in consecutive payments, but they must be employed by a qualifying employer at the time each payment is made.  Thus, a borrower could receive PSLF credit for regular payments made while employed by a qualifying employer, then decide to work in a non-qualifying position for some time (during which time payments would not be credited toward PSLF), and subsequently re-enter qualifying employment, at which time he would resume receiving credit toward the 120 required payments for PSLF.

40.     PSLF program borrowers may not make qualifying payments before the grace period on their Federal Direct Loans has expired unless they consolidate their loans into a Direct Consolidation Loan during the grace period and immediately begin repayment.

41.     After a borrower has made the required 120 qualifying payments, he must submit an application for loan forgiveness.  The borrower must be employed by a qualifying employer at the time of the application and at the time forgiveness is granted.  Any remaining balance that is forgiven is not subject to taxation as income by the Internal Revenue Service.

## IV.    Overview of the United States Trustee System

42.    The United States Trustee System, originally established in 1978 as a pilot program in only a few states, was permanently adopted in 1986.

43.     The system was created to lodge administrative responsibility for bankruptcy trustees outside of the judiciary.

44.    The U.S. Trustee System is a division of the Department of Justice and is comprised of three organizational units: 1) The Executive Office of the United States Trustee; 2) regional offices; and 3) field offices. There are 93 field offices.

45.    The Executive Office is responsible for setting policy, overseeing the substantive operations of the system, and handling administrative functions.

46.    The 21 regional offices are each headed by a U.S. Trustee appointed by the U.S. Attorney General for a five-year term.

47.    The U.S. Trustee is authorized to appoint Chapter 13 standing trustees pursuant to Section 586 (b) of the Bankruptcy Code, which provides that:

> "If the number of cases under Chapter 12 and/or 13 of title 11 commenced in a particular region so warrants, the United States Trustee for such region may, subject to the approval of the Attorney General, appoint one or more individuals to serve as standing trustee, or designate one or more assistant United States trustee to serve in cases under such chapter. The United States trustee for such region shall supervise any such individuals appointed as standing trustee in the performance of the duties of standing trustee."

## V.    Chapter 13 Standing Trustees

48.    Chapter 13 standing trustees perform multiple duties critical to the administration of Chapter 13 bankruptcy cases. The standing trustee supervises the debtor and is heard on questions of property valuation, plan confirmation, plan modification and ensures that the debtor begins making timely payments.

49.     The Bankruptcy Code directs Chapter 13 standing trustees to make payments to creditors under the plan "except as otherwise provided in the plan or in the order confirming the plan".

50.     The parameters for determining Chapter 13 standing trustee's compensation are set forth in the Bankruptcy Code Section 586(e). The standing trustee's compensation depends on the volume of disbursement that is generated from the funds received by the trustee, with a maximum cap,(an amount not to exceed the highest rate of basic pay in effect for level V of the Executive Schedule.),  which is established and revised by the U.S. Trustee.

51.     The amounts levied on the plan payments are applied in two ways. They are used to pay the trustee's personal compensation and pay the salaries of the trustee's staff and other overhead expenses of the trustee's office.

52.     Any money received in excess of the budgeted reserve is forwarded to the Department of Treasury.

53.     The standard of conduct for the Chapter 13 standing trustees, including procedures for suspension and termination of the assignment for future cases is included in the Code of Federal Regulations. 28 C.F.R. § 58.4 and 58.6.

54.      A standing Chapter 13 trustee's inability to administer cases may result in his removal. 11 U.S.C. §324.

**VI.     Chapter 13 Trustee Operations**

55.     The United States Trustee requires Chapter 13 Trustees to follow the guidelines established by the Office of the United States Trustee Program of the Department of Justice, known as the Chapter 13, Standing Trustee Handbook ("*Handbook*").  The Handbook governs how Chapter 13 Trustee operations work. For example, pursuant to statute the individual Chapter

13 Bankruptcy Trustee is accountable for all property received.  See *Handbook,* Chapter 1, Section C pp 1-2, attached as Exhibit "A."

56.     Scott F. Waterman is one of the designated Chapter 13 Standing Trustees for the Eastern District of Pennsylvania.

57.     Waterman was appointed by the United States Trustee as a Chapter 13 standing trustee on December 4, 2018.  A copy of Scott F. Waterman's appointment is attached as Exhibit "B."

58.      Currently, Waterman has a caseload of approximately 2,300 Chapter 13 cases to administer.  His office is located in Reading, Pennsylvania.

59.     Waterman is not an employee of the United States Government.

60.     Waterman's compensation and his office's operational expenses are paid from revenues collected from debtors as disbursement fees in Chapter 13 plans.

61.     The United States Trustee sets the disbursement fee rate that the Trustee withholds from debtor receipts to pay for operating expenses.  *See* Handbook Chapter 2, Section C p2-2 to 2-4.

62.      The percentage fee authorized for the fiscal year 2024 is 10%.

63.     The Standing Trustee has no authority to negotiate a percentage fee other than that fixed by the United States Trustee.  Handbook, Chapter 2, Section D p.2-2.

**VII.     Standing Trustees Employees**

64.     Waterman's office is staffed with 7 employees. These employees are paid directly by Waterman's office with the funds collected as disbursements fees.

11

65.     Waterman's employees are hired directly by his office and are not federal employees.  Although Waterman may recommend specific salaries for his employees, this discretion is to be exercised within the grading range established in a labor market study for a particular job.  *See* Handbook, Chapter 6, Section A(3)(a), pages 6-3 to 6-4.

66.     Waterman may create a job position within his office structure, but it has to be submitted to and approved by the U.S. Trustee's Office with his annual budget. Thus, Waterman has to submit his office annual operational budget, which includes employees' compensation, and yearly salary increases, and employees' job descriptions to the U.S. Trustee, for evaluation and approval.

67.     Waterman must submit monthly operating reports to the United States Trustee regarding receipts and disbursements.  In addition, Waterman's operations are audited once a year by an independent accounting firm selected by the U.S. Trustee.

68.     In the operation of his office, Waterman is required to follow the guidelines established by the Office of the United States Trustee Program of the Department of Justice, in the Handbook.

69.     The Handbook is prepared by the United States Trustee and the Chapter 13 Trustees are required to be in strict compliance with its dictates regarding how Chapter 13 Trustees operate.

## VIII.   Chapter 13 Trustees and their Offices Provide Public Interest Law Services

70.     Chapter 13 Bankruptcy Trustees provide the public legal service of administering hundreds of thousands of Chapter 13 bankruptcy cases before the United States Bankruptcy Courts throughout America.

71.     The statutory duties of a Chapter 13 Bankruptcy Trustees operating under the aegis of the United States Trustee are enumerated in 11 U.S.C. §§ 704, 1302, 1304.

72.     Generally, the Chapter 13 Bankruptcy Trustee is required to collect funds from the debtors, to be accountable for the estate, appear in each bankruptcy case and make recommendations to the Bankruptcy Court about whether to confirm or deny bankruptcy plans, ensure that the debtors perform their obligations, investigate the finances of the debtors, review the proofs of claim, file objections in court to plans, claims and fee applications, where appropriate, and when necessary, oppose the debtors' discharge, and be available to provide relevant information to parties-in-interest.

73.     Moreover, by designation by the Department of Justice, Chapter 13 Bankruptcy Trustees are the presiding officers at hundreds of thousands of public meetings of creditors every year.  Until the recent pandemic, those meetings of creditors were conducted in courthouses and meeting places provided by the Federal Government or the Department of Justice.  Security is provided by the U.S. Marhsall Service for trustees in many jurisdictions in the conduct of public meetings of creditors.

74.     Chapter 13 Bankruptcy Trustees are also responsible for disbursing money to creditors.  In Chapter 13 bankruptcy cases, debtors repay a portion of their debts in a three to five year plans which must be confirmed by the Bankruptcy Courts.

75.     Last year, Chapter 13 Bankruptcy Trustees disbursed over $4.2 Billion Dollars to creditors throughout the United States, including the Department of Education, and its various student loan servicers.  See FY-2023 Chapter 13 Trustee Audited Annual Reports. https://www.justice.gov/ust/private-trustee-data-statistics/chapter-13-data-an-statistics.

76.     Chapter 13 Bankruptcy Trustees also must prepare the final reports and file accountings with the Court for the administration of the estates. 11 U.S.C. §§ 704, 1302.

77.     All Chapter 13 Bankruptcy Trustees are required to be bonded and the beneficiary of the bond is … the United States Federal Government.  A copy Mr. Waterman's bond is attached as Exhibit "C."

78.     Because of their public purpose responsibilities, Federal Courts have long recognized that Chapter 13 Bankruptcy Trustees are entitled to quasi-judicial immunity, much like the immunity afforded to Federal Judges in the discretionary decisions they are required to make.  *See In re Castillo*, 297 F3d 940 (9th Cir. 2002); See also *In re Hunter,* 53 B.R. 866 (Bankr.N.M. 2016)(collecting cases).

## IX.     Not-For-Profit Organizations vs Pro Profit organization

79.     For-Profit and not-for-profit organizations differ fundamentally in their objectives, financial management and operational strategies.

80.     The primary objective of a for profit entity is to generate a profit for its owners or shareholders.  These organizations aim to maximize revenue and shareholder value.

81.     In contrast, not-for-profit organizations' main objective is to serve a public or mutual benefit other than the pursuant or accumulation of profits.

82.     In a for-profit entity, profits are distributed to owners or shareholders  and can be used for various purposes such as reinvestment in the business, dividends or bonuses.  Whereas in not-for-profit operations,  revenue is reinvested into the organization's activities.  See Inn Fee Gee, *Not-for-Profit Organizations:  A Multi-Disciplinary Review and Assessment from a Strategic Management Perspective*, Vol. 49, No. 1 Journal of Management, 237, 249 (January, 2023).

83.     For-profits are governed by a board of directors or owners focused on business growth and profitability.  Whereas, not-for-profits are typically  governed by a board of directors or trustees who are responsible for ensuring the organization adheres to its mission.


**X.     Chapter 13 Trustee Operations are Not-For-Profit**

84.     Chapter 13 Bankruptcy Trustees do not earn a profit from the trustee operation they  manage.      On  the  contrary,  the  United  States  Trustee  fixes  the  maximum  annual compensation of Chapter 13 Trustee pursuant to 28 U.S.C. §586(e).  See *Handbook* Chapter 1, page 2-2.

85.     Moreover, no portion of the Chapter 13 Bankruptcy Trustee's operating reserve carried forward may be utilized to pay the Chapter 13 Bankruptcy Trustee's compensation.  <u>See</u> Exhibit A page 2-3.

86.     The Chapter 13 Bankruptcy Trustees are prohibited from using the operating expense accounts for deposit or payment of any funds unrelated to the administration of the standing Trustees Chapter 13 cases.   See copy of the *Handbook* that discusses Bank Accounts, Chapter 4, page 4-2.

87.     At the end of each fiscal year, any money on hand in excess of the amounts set by the guidelines established by the United States Trustee are turned over to the United States Treasury. *See* Handbook  Chapter 6, Section A 5 p. 6-11.

88.     Chapter 13 Bankruptcy operations are not taxable entities.  See Bankruptcy Tax Reform Act of 1980, 26 U.S.C. §§1398 & 1399.  Therefore, they are not required to file Federal income tax returns, and as a consequence, do not need to seek tax exempt status.

89.     Chapter 13 Trustees do not own the assets of their Trustee operations and are prohibited from gifting those assets to any person or entity without United States Trustee permission.  See Handbook, Chapter 6, , Section A 7, p-12.

90.     There are approximately 170 Chapter 13 Bankruptcy Trustee's throughout the United States, and each Trustee operation (except for those in the states of Alabama and North Carolina) operate in the same manner under the guidelines of the authority of the United States Trustee Program.

91.     Because Chapter 13 Bankruptcy Trustees cannot personally earn or share in the profits from their Trusteeships they are not "for profit" operations.

**XI.     A Portion of Chapter 13 Bankruptcy Trustee Operations Costs are Funded by the Federal Government**

92.     Many of the Chapter 13 Trustees' operating expenses are paid for and funded by the Federal Government.  For example, the Federal Government pays for the printing and mailing of all of Notices of Meetings of Creditors which also contain filing deadlines.

93.     The Federal Government also pays for the cost of all video conferencing systems used for all meetings of creditors required in every bankruptcy case.

94.     The Federal Government also pays for the costs of all foreign language interpreters required for meetings of creditors.

95.     Finally, the Federal Government pays the costs, through PACER for electronic noticing of all parties on the bankruptcy court docket.

**XII.    Some Chapter 13 Standing Trustees Have Been Approved as "Qualified Employers" for PSLF.**

96.     The Department has designated thirteen (13) Chapter 13 Bankruptcy Trustees as qualified employers under the PSLF program.  Those thirteen Chapter 13 Bankruptcy Trustees are:

1.     Lloyd T. Kraus, Chapter 13 Trustee for the Eastern District of Texas.

2.     Marie-Ann Greenberg, Chapter 13 Trustee for the District of New Jersey.

3.     Sabrina L. McKinney, Chapter 13 Trustee for the Middle District of Alabama.

4.     Tammy L. Terry, Chapter 13 Trustee for the Eastern District of Michigan.

5.      Dynele Schinker-Kuharich, Chapter 13 Trustee for the Northern District of Ohio.

6.      Laurie K. Weatherford, Chapter 13 Trustee for the Middle District of Florida.

7.      Beverly M. Burden, Chapter 13 Trustee for the Eastern District of Kentucky.

8.      Glenn B. Stearns, Chapter 13 Trustee for the Northern District of Illinois.

9.      Michael G. Malaier, Chapter 13 Trustee for the Western District of Washington.

10.     Carey Ebert, Chapter 13 Trustee for the Eastern District of Texas.

11.     Ronda J. Winnecour, Chapter 13 Trustee for the Western District of Pennsylvania.

12.     William F. Jaworski, Jr. Chapter 13 Trustee for Delaware.

13.     Tiffany M. Cornejo, Chapter 13 Trustee New Mexico.


98.     Chapter 13 Bankruptcy Trustees can be designated as qualified employers for PSLF as public service organizations under two separate categories; they are (1) Federal government entities and/or (2) they provide public interest legal services. 34 C.F.R. §685.219


**XIII.  Rolando Ramos-Cardona**

99.     Rolando Ramos-Cardona began attending law school at Widener University School of Law in the fall of 2005 and he graduated in May, 2009.

100.    In order to finance his law school education, while he worked part time as a bank teller, he obtained various federal student loans.

101.    On February 20, 2016 he consolidated his Federal student loans and was placed in an income driven repayment plan and has been enrolled in an income driven plan since then.

102.    The principal balance of his consolidated Federal student loan as of March, 2016 was $133,516.01.

103.    Between January 13, 2014 through December 29, 2017 Ramos-Cardona was employed as a trial attorney in that Pennsylvania Attorney General's office, and applied for and received Public Service Loan Forgiveness credit for the length of time of his service employed by the Attorney General's Office.

104.    Ramos-Cardona began working at the Chapter 13 Trustee Office on January 3, 2018 as he was hired by Waterman's predecessor.

105.    Upon Waterman's appointment, Ramos-Cardona retained his position as trial attorney in the office.

106.    The current total balance of Ramos-Cardona's Federal student loan is approximately $147,509.00.

107.    On June 15, 2022 Ramos-Cardona submitted his application for Public Service Loan Forgiveness which was denied after reconsideration.

108.    On March 18, 2024 Ramos-Cardona submitted another application for Pubic Service Loan forgiveness which was denied after reconsideration.

109.    Ramos-Cardona has been a full time employee (working over 40 hours a week) as a trial attorney for Waterman's Chapter 13 operation since Waterman was appointed in 2018.

110.    Plaintiff has applied for PSLF but was denied by ED because it determined Waterman's Chapter 13 Trustee operation was a "for profit" entity.

111.    Ramos-Cardona's appeal to ED was denied.   A copy of the email denial dated March 19, 2024 is attached as Exhibit "D."

112.    Ramos-Cardona's denial was not unique. Employees of at least twenty-six (26) other Chapter 13 Standing Trustee offices have also been denied because ED wrongly

determined that those operations were "for profit."   A copy of the list of other Chapter 13 Bankruptcy Trustees' denied as qualified employers under PSLF is attached as Exhibit "E."

113.    It is arbitrary and unreasonable that thirteen Chapter 13 Bankruptcy Trustees have been designated as qualified employers for PSLF while at least twenty-seven Chapter 13 Trustees have been rejected since all Chapter 13 Bankruptcy Trustees do the same work.

114.    Although Mohela functioned as the loan servicer, the Department retains final reviewing authority under the PSLF program.

115.    On information and belief, the Department has never delegated final decision-making authority under the PSLF program to Mohela or any other entity.

**XIV.   Despite the Chapter 13 Bankruptcy Trustees' Requests, the Department Has Refused to Explain or Rescind Its Arbitrary Actions.**

116.    The Chapter 13 Bankruptcy Trustees' efforts to have the Department consistently treat all Chapter 13 Trustees similarly as qualified employers have been unavailing.

117.    The Chapter 13 Trustees have written to, and held a meeting with the Department's  student loan ombudsmen.  The Department, however, refuses to rectify the problems caused by its denial of eligibility certifications submitted by Chapter 13 Bankruptcy employees.

**COUNT I – 5 U.S.C. § 706(2)**
**(Arbitrary and Capricious Agency Action)**

118.    Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 117 (and all subparts thereto) as if set forth fully herein.

119.    The APA provides a cause of action in federal district court for any person aggrieved by final agency action.  See 5 U.S.C. §§ 702-704.

120.    The APA provides that the reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or not in accordance with law.  Id. § 706(2)(A). The court must also set aside agency actions, findings, and conclusions found to be in excess of statutory jurisdiction, authority, or  limitations, or short of statutory right.  Id. § 706(2)(C).

121.    The definition of the term "public service job" in 20 U.S.C. § 1087e(m) cannot fairly be interpreted to exclude Chapter 13 Bankruptcy Trustees' as qualified employers or deny the Plaintiff PSLF certification.

122.    The Plaintiff met all of the other requirements under 20 U.S.C. § 1087e(m) such that his monthly student loan payments should have all been applied toward the 120 monthly payments necessary for forgiveness under the PSLF program.

123.    If a borrower meets the statutory requirements, the Act does not allow the Secretary discretion to deny the borrower credit toward the 120 payments required for forgiveness.

124.    The Department's determination that the Plaintiff's payments did not qualify were therefore inconsistent with 20 U.S.C. § 1087e(m), and thus not in accordance with law for the purposes of the APA.  The Department's interpretation should be set aside.

125.    In the alternative, the Department's interpretation is not in accordance with law because, by denying eligibility to Chapter 13 Bankruptcy Trustees Offices, it action is inconsistent with its own regulation, 34 C.F.R. § 685.219.  The interpretation should therefore be set aside.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter a Judgment:

(1)    Ordering the Defendants to adopt interpretation that recognizes that Chapter 13 Bankruptcy Trustees are "public service organizations" that employ individuals in "public service jobs" for the purposes of the PSLF program, and  therefore are qualifying employers;

(2)    Ordering the Defendants to adopt an interpretation that recognizes that the Plaintiff has qualified for the PSLF program by working for a Chapter 13 Bankruptcy standing trustee as a trial attorney;

(3)    Declaring that Defendants have violated the APA – by acting arbitrarily, capriciously, in abuse of discretion, or in a manner otherwise not in accordance with law – in denying Plaintiff's eligibility;

(4)    Awarding any and all injunctive relief necessary to prevent the application of the Department's arbitrary and capricious interpretation;

(5)    Retaining jurisdiction in this Action to ensure Defendants' compliance with the Court's Judgment;

(6)    Awarding Plaintiff his attorney's fees, expert witness fees, and all other reasonable expenses incurred in pursuit of this Action under 28 U.S.C. § 2412; and

(7)    Awarding such relief as the Court deems just and proper.

Respectfully submitted,


/s/ Ann E. Swartz
Ann E. Swartz (PA 201926)
2901 St. Lawrence Avenue
Suite 100
Reading, PA 19606
Tel:  (610) 779-1313
Fax:  (610)779-3637

Attorney for Plaintiff


Dated: August 8, 2024