**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

———————————————————————
ROLANDO RAMOS-CARDONA,                          :
                                                :
                                                :
                Plaintiff,                      :
                                                :
        v.                                      :    CIVIL ACTION NO. 5:24-cv-04073
                                                :
UNITED STATES DEPARTMENT OF                     :
EDUCATION, *et al.,*                            :
                                                :
                                                :
                Defendants.                     :
———————————————————————                         :

**ORDER**

        AND NOW this _____ day of _____, 2025, upon

consideration of the Motion for Summary Judgment on the administrative

record filed by Defendants the United States Department of Education and

Linda McMahon, in her official capacity as United States Secretary of Education,

and Plaintiff's response thereto, it is ORDERED Defendants' motion is

GRANTED.

        It is further ORDERED that judgment is entered in favor of Defendants,

and the Clerk of Court shall mark this case as CLOSED.

                                        BY THE COURT:


                                        _____
                                        CATHERINE HENRY, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                                    :
ROLANDO RAMOS-CARDONA,                               :
                                                    :
                                                    :
            Plaintiff,                              :
                                                    :
        v.                                          :    CIVIL ACTION NO. 5:24-cv-04073
                                                    :
UNITED STATES DEPARTMENT OF                          :
EDUCATION, *et al.,*                                :
                                                    :
                                                    :
            Defendants.                             :
_____             :

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD

Pursuant to Federal Rule of Civil Procedure 56, Defendants United States Department of Education ("the Department") and Linda McMahon, in her official capacity as United States Secretary of Education (collectively "Defendants"), move for judgment on the administrative record.

After reviewing Plaintiff Rolando Ramos-Cardona's application for Public Service Loan Forgiveness (PSLF) related to his time employed as a trial attorney un a Chapter 13 Standing Bankruptcy Trustee's office, the Department determined that Ramos-Cardona's employer was not a "qualifying employer" as defined by the PSLF program and its implementing regulations, and therefore denied his application for loan forgiveness. Ramos-Cardona now asks the Court to overturn the agency's decision. For the reasons discussed in the accompanying memorandum of law, the agency's decision is amply supported by the administrative record and

applicable law. Plaintiff cannot meet his burden to show that the decision was arbitrary and capricious or otherwise not in accordance with law.

Accordingly, summary judgment should be granted in favor of Defendants.

July 1, 2025                                Respectfully submitted,


                                           DAVID METCALF
                                           United States Attorney

                                           /s/ *Gregory B. David/srb*
                                           GREGORY B. DAVID
                                           Chief, Civil Division

                                           */s/ Erin Lindgren*
                                           ERIN LINDGREN
                                           Assistant United States Attorney
                                           615 Chestnut Street, Suite 1250
                                           Philadelphia, PA 19106
                                           (215) 861-8564
                                           Erin.Lindgren@usdoj.gov

                                           *Counsel for Defendants*

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————— :
:
ROLANDO RAMOS-CARDONA,                   :
:
:
Plaintiff,            :
:
v.                            :    CIVIL ACTION NO. 5:24-cv-04073
:
UNITED STATES DEPARTMENT OF              :
EDUCATION, *et al.,*                     :
:
:
Defendants.           :
———————————————————— :

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ADMINISTRATIVE RECORD

Congress created the Public Service Loan Forgiveness (PSLF) program to provide an avenue by which individuals pursuing qualified public interest employment could seek to have their student loan debt forgiven after 10 years of public service employment. In determining whether loans may be forgiven under the PSLF program, the operative inquiry is whether the *employer* qualifies under the statute and its implementing regulations. If an employer does not meet the criteria, the applicant is not eligible for PSLF.

Here, at the time he applied for PSLF, Ramos-Cardona worked for a Standing Chapter 13 Bankruptcy Trustee's Office ("Standing Trustee").[1] Standing Trustees are not government employers, are not registered non-profit entities, and do not provide public interest law services that are funded in whole or in part by a government agency. Accordingly, the Department concluded that a Standing

———————————————————

[1] For part of the ten-year period, Ramos-Cardona worked for a different employer that was a qualifying employer for PSLF purposes.

Trustee is not a qualifying employer for purposes of the PSLF program. Ramos-Cardona's application for PSLF was denied.

Ramos-Cardona now bears the heavy burden of demonstrating that the Department's decision was arbitrary and capricious. But the Department's determination that Standing Trustees are not qualifying employers is supported by the administrative record and federal law. Therefore, the Court should grant summary judgment on the administrative record in favor of Defendants.

## I.    Factual Background

### A.  Background on the PSLF Program

The College Cost Reduction and Access Act of 2007 ("CCRAA") added a new Public Service Loan Forgiveness Program to the William D. Ford Direct Loan ("Direct Loan") Program. 73 Fed. Reg. 37,694, 37,695 (July 1, 2008). The Direct Loan Program provides subsidized and unsubsidized loans to students and their parents to pay for the costs of higher education. 20 U.S.C. § 1087c(a). The CCRAA directs the Secretary of Education to "cancel the balance of interest and principal due . . . on any eligible Federal Direct Loan not in default" for borrowers who meet certain eligibility requirements. To qualify for loan forgiveness under the PSLF Program, a borrower must (1) have made 120 monthly payments on an eligible loan after October 1, 2007 under designated repayment plans, (2) be employed in a public service job at the time of forgiveness, and (3) be employed in a public service job at the time each of the 120 monthly payments were made, and at the time forgiveness is granted. *Id.* § 1087e(m)(1)(A), (B).

#### 1.  *"Qualifying Employer"*

Importantly, to be eligible for PSLF, an applicant must be employed full-time by a qualifying public service employer. 20 U.S.C. § 1087e(m)(1)(B); 34 C.F.R. § 685.219(c)(1)(ii). Public service employment is defined, as relevant here, as "a full-time job in … government (excluding time served as a member of Congress), …

2

public interest law services (including prosecution or public defense or legal advocacy on behalf of low-income communities at a nonprofit organization), … or at an organization that is described in section 501(c)(3) of Title 26 and exempt from taxation under section 501(a) of such title[.]" *Id.* § 1087e(m)(3)(b)(i).

The Department issued a Notice of Proposed Rulemaking on July 1, 2008, to "implement the basic statutory framework for the public service loan forgiveness program." 73 Fed. Reg. 37694, 37704, AR 13. As required by 20 U.S.C. § 1098a, the Department developed the proposed regulations by using a negotiated rulemaking committee that included representatives of the organizations and individuals with an interest in the Direct Loan Program. 73 FR 37694, 37695.

As part of this process, the Department aimed to make clear who would qualify for loan forgiveness based on their public service work. The negotiated rulemaking committee engaged in "much discussion concerning the many types of public service jobs that might qualify a borrower for public service loan forgiveness." 73 FR 37694, 37704. The committee and the Department determined that, rather than "defin[ing] specific job types that might qualify," "it would be clearer and more efficient to define the types of organizations that would qualify as eligible employers" for purposes of PSLF. *Id.*

Therefore, the Department proposed that under the PSLF it would "base eligibility for the forgiveness on the *type of organization* that employs the borrower," rather than on whether a specific employment position met the definition of "public service jobs." *Id.* (emphasis added). Accordingly, the Department proposed defining "public service job" as (1) "[a] full-time job in a number of public service occupations and fields," (2) "a full-time job at a non-profit organization that satisfies the requirements of section 501(c)(3) of the" Internal Revenue Code, or (3) "a full-time faculty member at a Tribal college or university . . . or other faculty teaching in high-needs areas." *Id.* The Department also proposed defining "employee or

3

employed" as "an individual who is hired and paid by a public service organization."
*Id.*

The Department proposed defining a "public service organization" as (1) "[a]
Federal, State, local, or Tribal government organization, agency, or entity," (2) "[a]
public child or family service agency,"; (3) "[a] non-profit organization that qualifies
under section 501(c)(3)," (4) "[a] Tribal college or university," or, as is most relevant
to this case, (5) "a private organization that" provides "public services," which the
agency enumerates (and which includes "public interest law"), and that is "not a
business organized for profit, a labor union, a partisan political organization, or an
organization engaged in religious activities." *Id.* at 37,705.

"Public interest law" was defined to refer to "legal services provided by a
public service organization that are funded in whole or in part by a local, State,
Federal, or Tribal government." *Id.* Further notes in the proposed rule explain that
"[t]he term 'Public Interest Law' limits such services to services that are supported
in whole or in part by a government." 73 FR 37694, 37705. The negotiated
rulemaking committee approved the proposed regulations by consensus.

The Department issued a final rule on the PSLF program on October 23,
2008. 73 Fed. Reg. 63232 (Oct. 23, 2008); *see also* 34 C.F.R. § 685.219. The Final
Rule, which resulted in the publication of 34 C.F.R. § 685.219, clarified that a
"qualifying employer" refers to (1) Federal, State, local, or Tribal government
entities, (2) public child or family service agencies, (3) non-profit organizations
under section 501(c)(3) of the Internal Revenue Code, excluding certain religious
organizations, (4) Tribal colleges or universities, and (5) nonprofit organizations
that provide "non-governmental public service," which the regulation defines, and
which includes public interest law services. 34 C.F.R. § 685.219. The Department
further clarified that "[n]on-profit organizations that do not qualify under section

4

501(c)(3)" of the IRC "may nonetheless qualify as a private organization that provides qualifying public services." 73 Fed. Reg. 63232, 63243.

Thus, the Department provided guidance and issued regulations regarding which types of employers fall within the broad categories of employers defined as "public service organizations."[2] 72 Fed. Reg. 63232.  In issuing the Final Rule, the Department recognized that it might need to make individual determinations regarding the eligibility of some private or for-profit organizations that receive some government funding in exchange for providing some public services. The Department emphasized that it "continue[d] to believe that the term 'public sector jobs' does not encompass every job." 73 FR 63232, 63243. Rather, the "nature of the employer and the funding source of salaries are appropriate considerations." *Id.* As the agency explains in its Frequently Asked Questions on the PSLF, "[t]he specific job that [a borrower] perform[s] does not matter," because eligibility turns on whether the borrower is "employed by an eligible public service organization." https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service/questions

    *2. Applying for PSLF*

The Department administers the federal student financial aid programs under Title IV of the Higher Education Act through the Federal Student Aid office. Under the Direct Loan Program, the Department issues and oversees the loans while contractors service them. GAO-18-547 at 3-4, AR0001. Since 2011, the

---

[2] In a comment and response to the regulation with facts similar to those here, private law firms that provide defense for indigent defendants argued that Interest on Lawyers' Trust Accounts (IOLTA) funding should be considered public funding for purposes of meeting the requirement of being "funded in whole or in part by a local, State, Federal or Tribal government." 73 FR 63232, 63242. Ed. considered this comment and determined it was "not appropriate" to make employees of for-profit firms receiving IOLTA funding specifically eligible for the public service loan forgiveness program," reasoning that "[t]hese employees are not employees of a government agency and are not likely to work full-time at a public service job." *Id.*

Department has contracted with one of its existing loan servicers, FedLoan Servicing, as its sole servicer for borrowers pursuing PSLF relief. GAO-18-547 at 4, AR0001.[3]

In 2012, the Department established a voluntary process—the submission of an Employment Certification Form—to provide guidance to borrowers about the eligibility of both their employment and payments for PSLF (and servicing by FedLoan Servicing). GAO-18-547 at 5; *see also* 73 Fed. Reg. 63232, 63241 (Oct. 23, 2008); 34 C.F.R. § 685.219(e)(1). This form "include[s] an employer certification section and instructions regarding supporting documentation that the Department will need to determine the borrower's eligibility." *Id.* at 63241-42. A borrower "[may] use this form to collect a certification from his or her employer either annually or at the close of the 120-payment qualifying period." *Id.* at 63242.

The Department's PSLF servicer—FedLoan Servicing—reviews Employment Certification Forms to determine if the borrower's employment and loans qualify and if they have made 120 qualifying payments. GAO-18-547 at 6. If the servicer is unable to make a qualifying employer determination based on the information provided, it may request "additional documentation about your qualifying employment." Public Service Loan Forgiveness FAQ, FEDERAL STUDENT AID, https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service/questions#pslf-process (last visited July 1, 2025). Ed. advises that borrowers should be able to "demonstrate that [their] employer[s] meet[] the definition of a qualifying employer." *Id.*

If, after 120 months have passed, a borrower applies for PSLF relief with FedLoan Servicing, the servicer first determines whether the borrower's loans qualify and if the borrower's employment qualifies. If either do not qualify, the

---

[3] Defendants lodged the administrative record with the Court at ECF No. 24-2. All references to "AR" are references to this document.

borrower receives a notification that the application is denied. GAO-18-547 at 6, Fig. 1; 8, Fig. 2. If the borrower qualifies under the first two parameters, the servicer reviews the application to determine whether the applicant has made 120 qualifying payments. *Id*. at 8, Fig. 2. If the servicer finds that 120 qualifying payments have been made, the application is transferred to the Department for final review and, if the application shows the borrower has met the eligibility requirements, final approval. *Id*.

In the event of a denial, the Department provides several options for disputing eligibility issues, "including contacting the PSLF servicer or filing an official complaint with [the Department of] Education's Federal Student Aid Ombudsman Group or through the Federal Student Aid Feedback System." *Id*. at 23.

### B. Background on Ramos-Cardona's Application for PSLF

1. *June 16, 2022 Application*

On June 16, 2022, Ramos-Cardona submitted an Employment Certification Form to the Department, certifying that he was employed by the Pennsylvania Office of Attorney General from 2014 to 2017.[4] AR0010-12. On his Employment Certification Form, Ramos-Cardona certified that the PA Attorney General's Office was a governmental organization and, therefore, Ramos-Cardona was not required to provide information about whether it was tax-exempt, a not-for-profit organization, a partisan political organization or labor union, or information about the type of services that the employer provides. *See* AR0015. The Department determined that the payments Ramos-Cardona made toward satisfying his student loan debt during the period he worked for the PA Attorney General's Office were qualifying payments for purposes of the PSLF program. *See* AR0007.

---

[4] Ramos-Cardona later resubmitted the same form on September 13, 2022. AR0013.

As part of his September 13, 2022 submission to the Department, Ramos-Cardona also submitted an Employment Certification Form for his employer from 2018 to September 2022, Standing Chapter 13 Trustee Scott F. Waterman, and provided Waterman's federal employer identification number. AR0016. Waterman also signed this form. *Id.* On the form, Ramos-Cardona and Waterman certified that Waterman's Standing Chapter 13 Trustee's Office was not a governmental organization (in response to question 9) and was not tax-exempt under Section 501(c)(3) of the Internal Revenue Code (in response to question 10). *Id.*

Ramos-Cardona and Waterman certified that his office is a not-for-profit organization that is **not** tax exempt under Section 501(c)(3) of the Internal Revenue Code (in response to question 11). *Id.* Ramos-Cardona and Waterman further certified that Waterman's office provides public interest legal services (in response to question 13). *Id.* Waterman signed the form, thereby certifying that the information provided therein was "true, complete, and correct to the best of my knowledge and belief," that he was an authorized official of the organization, and that Ramos-Cardona was his employee. *Id.*

Ramos-Cardona also submitted a June 15, 2022, letter from Waterman, asserting that Waterman's office is "a public service organization" insofar as Waterman was appointed as a standing trustee under 28 U.S.C. § 586(b). AR0017, *see also* AR0018. Waterman further asserted, "[w]e provide a public service by administering chapter 13 cases here in the Eastern District of Pennsylvania and are required to report and account to the Bankruptcy Court, the United States Trustee and all additional stake holders [sic]." AR0017. Waterman also contended that his office is not required to file federal or state income tax returns. *Id.* In support of this contention, Waterman attached his designation of Chapter 13 Standing Trustee under 28 U.S.C. § 586(b). AR0018. Ramos-Cardona also attached an October 28, 2004 Notice from the Executive Office for United States Trustees. AR0019. The

Notice states that the IRS intended to modify Publication 908, Bankruptcy Tax Guide, to state "that the interest earned on post-confirmation and expense accounts is not taxable to the chapter 13 standing trustee, and that these accounts are not taxable trusts for which the standing trustee must file a fiduciary income tax return." *Id.* Ramos-Cardona also submitted his Form W-2 Wage and Tax Statement for 2021 from Waterman's Office. AR0020.

2. *September 30, 2022 Updated Application*

Thereafter, on September 30, 2022, Ramos-Cardona sent another fax to the Department AR0022. On the cover page, he wrote,

> [b]ack on September 13, 2022 I faxed a PSFL [sic] Application with supporting documents. Subsequent I noticed that I made a mistake on the certification of my current employer Scott F. Waterman. The employer should have been classified as a governmental organization. Because of this, enclosed is my PSFL [sic] Application and supporting documents.

*Id.* Ramos-Cardona attached a new PSLF application, an employment certification from the PA Office of the Attorney General, and an amended employment certification from Waterman. In the employment certification, Waterman changed his prior certification to certify that his office *is* a governmental organization (a Federal, State, local, or Tribal government organization, agency, or entity). AR0025.

After Ramos-Cardona submitted a PSLF application, service of his federal student loans was transferred to the Higher Education Loan Authority of the State of Missouri ("MOHELA"), an entity that services federal student loans.[5] AR0031. On February 18, 2023, MOHELA notified Ramos-Cardona that he was not yet eligible for public service loan forgiveness because he had not yet made the required

---

[5] As the letter explains, upon this transfer, the Department continued to own the loans and MOHELA began managing the loans and assisting Ramos-Cardona on the Department's behalf. AR0031.

120 qualifying payments. AR0035. Loan payments that Ramos-Cardona made while employed at the PA Attorney General's Office were credited. AR0036, AR0040.

On August 23, 2023, MOHELA sent Ramos-Cardona a letter notifying him that it was still reviewing his eligibility for public service loan forgiveness and "need[ed] additional time to determine if you work for a qualifying employer and meet all other requirements of the PSLF program." AR0044. On August 28, 2023, MOHELA sent an email to Ramos-Cardona advising that it had reviewed his request for PSLF and he was not eligible yet, as he had not made the required 120 qualifying payments necessary to be eligible for PSLF. AR0174.

3. *Ramos-Cardona's First and Second Requests for Reconsideration*

On November 16 2023, Ramos-Cardona requested reconsideration of the denial of his PSLF application, and this decision underwent a first level review. AR0060.[6] To evaluate a reconsideration request, the Department considers "[a]ny relevant evidence that is obtained by the Department" and "[a]dditional supporting documentation not previously provided by the borrower or employer." 34 C.F.R. § 685.219(g)(2).

In support of his request for reconsideration, Ramos-Cardona submitted a letter from his employer, a section of the Chapter 13 standing trustee handbook, and the designation of Waterman as Standing Trustee. *Id.* Among other information contained in these documents, the section of the handbook describes that a Standing Trustee's compensation is received as a percentage fee of all bankruptcy plan payments received by the standing trustee under the plan. AR0067, *see also* 28 U.S.C. § 586(e)(2).

On November 17, 2023, Ramos-Cardona submitted another request for reconsideration, purportedly after receiving an email stating that his

---

[6] This reconsideration request was numbered 16738594 by Ed.'s software. *See* AR0060 (under "Case Number").

reconsideration review was closed. *See* AR0074.[7] In support of this new request for reconsideration, Ramos-Cardona submitted a copy of his W2, Chapter 6 of the Chapter 13 Standing Trustee handbook, and a letter brief. AR0075.

Ramos-Cardona's letter brief asserts it provides "additional information" about his employer and the "non-profit status of [his] employment." AR0069. Ramos-Cardona contended that, "the role we serve in my current employment, coupled with the oversight and directive of the federal government, should make my employer eligible as a 'governmental employer.'" *Id.*

Ramos-Cardona stated that,

> Standing Chapter 13 Trustees administer all the Chapter 13 bankruptcy cases filed in their district. In Chapter 13 bankruptcies, bankruptcy debtors propose Chapter 13 repayment Plans to repay their creditors over a three to five year term. The debtors then tender monthly payments to the Chapter 13 Trustee who in turn disperses those funds to the debtors' creditors. The Trustee has a fiduciary responsibility to both the debtors, the creditors and the Bankruptcy Estate, and acts as the agent to ensure that the debtors' creditors are being repaid in a timely and efficient manner. ***See Handbook- Chapter 1, Sections C and D, p. 1-2 through 1-4.***

> Per 28 U.S.C. § 586(e)(2), Standing Chapter 13 Trustees receive their funding from taking a percentage of the total receipts paid by the debtors each month. The total percentage fee cannot exceed 10% of the total receipts each month, per statute. The percentage fee is calculated to be as low as possible to fund office expenditures, as all amounts remaining are disbursed to creditors of the Bankruptcy Estate.

*Id.*

Ramos-Cardona further noted that Standing Trustees are required to comply with the U.S. Bankruptcy Code and to adhere to the terms of the Chapter 13 Trustee Handbook published by the U.S. Trustee. RRC-AR0069-70. Ramos-Cardona further asserted that the percentage fee that a Standing Trustee may withhold from

---

[7] This reconsideration request was numbered 16755347 by Ed.'s software. *See* AR0074 (under "Case Number").

total receipts to fund office operations is fixed by the U.S. Trustee, that the U.S.
Trustee determines the Standing Trustee's compensation each year, must approve
the Standing Trustee's operating budget, and reviews monthly cash flow reports,
final annual reports, and annual audit results. AR0070.

Included with Ramos-Cardona's application are sections of the Handbook for
Chapter 13 Standing Trustees ("the Handbook"). At the outset, the Introduction to
the handbook states that, "Standing trustees are encouraged to follow Practice Tips
identified in this Handbook but these are not considered mandatory." AR0078. The
Handbook explains that the standing trustee has a fiduciary responsibility to the
bankruptcy estate and is responsible for a number of tasks required in the
administration of the bankruptcy estate, with 12 specific responsibilities
enumerated. AR0079-80.

Ramos-Cardona wrote that, "while Standing Chapter 13 Trustees are not
technically federal employees, they are heavily regulated by the Department of
Justice through the United States Trustee." AR0071. Ramos-Cardona further
asserted that "Standing 13 Trusteeships operate as governmental entities, whose
public purpose is to ensure the proper[] administration of cases arising under
Chapter 13" of the Bankruptcy Code. *Id.* Ramos-Cardona further claimed, without
providing any evidence, that he knew of one former Standing Trustee trial
attorney—who later became a Standing Trustee—who  was determined to be an
eligible employer under PSLF. *Id.*

   4.  *The Department's First-Level Review and Determination*

In November 2023, a Department employee reviewing the PSLF application
conducted a business search on the Pennsylvania Secretary of State website for
Scott F. Waterman. AR0046. The search revealed that Waterman was registered
with the Commonwealth as a domestic business corporation, for which Waterman
served as the President. *Id.*  The employee also accessed, and saved to the decision

file, the "official website" of Waterman, which asserts that "Scott F. Waterman is one of two Chapter 13 Trustees in the Eastern District of Pennsylvania." AR0052.

The employee also accessed and saved to the file the website of the U.S. Trustee Program/Department of Justice, which has a Chapter 13 Standing Trustee Office Locator. *See* Website excerpts, AR0053-55. Above Waterman's contact information, the U.S. Trustee's website reads as follows.



**PENNSYLVANIA**

Note: The individuals listed are private parties, not government employees.

**TRUSTEE(S) COVERING THE EASTERN DISTRICT OF PENNSYLVANIA**

https://www.justice.gov/ust/eo/private_trustee/locator/13.htm

AR0054-55. In particular, the U.S. Trustee website notes that Waterman is a private party and *not* a government employee. *Id.* An internal note to the initial determination on Ramos-Cardona's PSLF application reads, "20-0720359 of Scott F. Waterman, Standing Ch. 13 Trustee confirmed by DB. Confirmed by DB that SCOTT F. WATERMAN P.C. is an Ineligible For Profit company." AR0108.

On December 11, 2023,[8] Department employee Tiffany Leonard drafted an initial note stating, "Confirmed by DB that SCOTT F WATERMAN P.C. is an Ineligible For Profit company." *See* AR0115.

On December 15, 2023,[9] Department employee Charlotte Mason drafted a "Reconsideration Note" and "Determination Note" regarding Ramos-Cardona's application. AR0113-114. The Reconsideration Note described that the document

---

[8] The administrative record contains the incorrect date of this action, reflecting that it took place on December 11, 20<u>24.</u> *See* AR0116. However, this date was corrected through the Updated Certification of Index to the Administrative Record signed by Nikki Bowman and filed June 26, 2025. *See* ECF No. 28-1 at ¶ 6.

[9] *See* note 5, supra.

Ramos-Cardona, the Copy of Designation of Standing Trustee, "does not substantiate proof of eligibility for PSLF." AR0113. Mason further wrote, "[t]he employer remains ineligible and the reason for ineligibility is "for profit" and no documentation provided that warrants a change in eligibility determination." *Id.*

The Determination Note summarizing the Department's initial eligibility decision reads:

<div style="border:1px solid black; padding:10px;">

Determination Note

20-0720359 of Scott F. Waterman confirmed by borrower's W2 in 16755374

already in DB ineligible

Information from the PA Secretary of State confirms that Scott F. Waterman is a Domestic Business Corporation. (uploaded SOS-page).

Information from DOJ website confirms that Scott F. Waterman is Chapter 13 Standing Trustee receives compensation for their duties, therefore, it appears this is a for profit organization. (uploaded "home" page of website)

link to DB as master

FSA managed

www.readingch13.com

Eligibility period: in perpetuity-ineligible – updated EP screen

No results of EIN in ProPublica

</div>

AR0109, AR0113.[10] This note reflects that Waterman's EIN was already in the Department's database as being an ineligible employer, that information from the Pennsylvania Secretary of State confirmed that Waterman was registered as a domestic business corporation, that Waterman receives compensation for his duties

---

[10] The first note in the record is a screenshot of the internal Ed. database showing the note. The second, at RRC_AR0113, contains annotations provided by the custodian of records to provide the date and author of the note. *See* First Updated Certification of Index to Administrative Record, ECF No. 25-1 at ¶ 5, Index #39 & 40.

from non-governmental sources, and that there were no results for Waterman's EIN in ProPublica (which maintains a database of non-profit companies).

Following review, the Department's database includes a "determination" concluding that Waterman was not a qualifying employer for the PSLF program.[11] AR0112, 116. In addition to the factors discussed above in the "Determination Note," the "Determination" includes the fact that a search for records related to Waterman returned no results on "TEOS" (Tax Exempt Organization Search) or "FAC" (Federal Audit Clearinghouse), additional public databases that contain information about nonprofit organizations. *See* AR0112.

This determination was reviewed by Supervisory Program Management Analyst Nikki Bowman (maiden name Harris), of the Office of Loan Portfolio Management for the U.S. Department of Education between December and February of 2024. *See* AR0123. On January 17, 2024, Bowman noted that, with respect to employees of Chapter 13 standing trustee offices, she reviewed and "came to the conclusion that They [sic] are contracted by DOJ, with a small population that are direct hires from the state to perform the same duties." *Id.*

On February 2, 2024, MOHELA sent Ramos-Cardona a letter notifying him that his employer was not eligible for the PSLF program, stating "[w]e determined

---

[11] The full "DETERMINATION" reads:

> 20-0720359 of SCOTT F WATERMAN confirmed by W2 in 08708645
> PA SOS confirms that SCOTT F WATERMAN is listed as a
> BUSINESS CORPORATION therefore is a For Profit organization.
> Uploaded.
> Linked to DB as Master
> FSA managed
> Eligibility Period: In Perpetuity. Ineligible: For Profit
> ProPublica: 0 RECORDS
> Additional Note: No results on TEOS or FAC

that your employer is a for-profit organization, which does not qualify for PSLF or TEPSLF." AR0119. On February 7, 2024, MOHELA emailed Ramos-Cardona to advise that he was not yet eligible for PSLF because he had not made 120 qualifying payments. AR0176.

Additionally, on February 20, 2024, Department attorney Brian Siegel discussed the following facts in response to Bowman's email.[12]

> Chapter 13 trustees are not Federal employees and are not paid by the Federal Government. For standing trustees, that compensation derives from fees that individual debtors pay into the system, via court filing fees and the money paid into their Chapter 13 plans. Those working as, or employed by, the standing trustees' offices receive their paychecks not from the federal government, but from the office they work for – a private company. The Department of Justice website declares that, "States Trustees appoint and supervise private trustees who administer bankruptcy estates under chapters 7, 11, 12, and 13 of the Bankruptcy Code. Private trustees are not government employees." They do not receive any compensation from the government, instead collecting fees from debtors' Chapter 13 plans. 28 U.S.C. § 586(e)(1).

AR0121-122.

On March 4, 2024, Ramos-Cardona requested further reconsideration of this decision. AR0161. In support, Ramos-Cardona attached a letter from Waterman dated February 28, 2024. AR0161-162. Waterman's letter urged that his office be deemed a qualifying employer for the PSLF program under the category of "not-for-profit public interest law services." AR0124. Therein, Waterman stated, without providing any evidence or any corresponding employer identification numbers, that at least eight Chapter 13 standing bankruptcy trustees had been deemed qualifying employers for PSLF. AR0124-125.

Waterman also asserted that his office provides "the public legal service" of administering Chapter 13 bankruptcy cases, that he is appointed by the U.S.

---

[12] Mr. Siegel's legal advice is redacted from the administrative record.

Trustee's Office, and discussed his responsibilities. AR0125-126. Waterman further asserted that standing trustees "are entitled to quasi-judicial immunity," like federal judges. AR0127. He further asserted that his office is not a taxable entity, thereby making it a "not-for-profit" entity, and that "[m]any of [his office's] operating expenses are paid for and funded by the Federal government" including the costs of printing and mailing certain documents, video conferencing systems, interpreters, and PACER notices. AR0127.

This additional information did not change the Department's conclusion and this request for reconsideration was closed on March 7, 2024. AR0161.

## II.    The Department's determination on Ramos-Cardona's application for PSLF is supported by the administrative record and applicable statutes and regulations.

In connection with his application for PSLF, Ramos-Cardona provided different, and conflicting, rationales for why his employer, Chapter 13 Standing Trustee Scott Waterman, should be deemed "qualifying" under the PSLF program.

First, Ramos-Cardona asserted that Waterman is a not-for-profit organization that is **not** tax-exempt under Section 501(c)(3) of the Internal Revenue Code, but which provides public interest legal services. AR0016. *Then*, and before receiving a decision on his first application, Ramos-Cardona asserted that Waterman is a "governmental organization," defined as a "Federal, State, local or Tribal government organization, agency, or entity." AR0025. After his application was denied, Ramos-Cardona sought reconsideration, with his employer *then* asserting that he should fall under the category of a not-for-profit organization providing public interest law services. AR0124.

17

Department employees reviewed Ramos-Cardona's application for PSLF, and determined that loan payments he made while employed by Waterman were not eligible for PSLF because Waterman is not a non-profit, but is registered with the Pennsylvania Secretary of State as a for-profit organization. Moreover, Waterman is not a federal government agency or entity, and neither the salaries of his employees, nor the services they provide, are funded in whole *or* in part by the federal government.[13] Instead, Waterman's office operations and the salary of his employees are funded by fees paid by bankruptcy petitioners seeking a discharge, and by fees collected from payments toward the bankruptcy plan by Waterman, who is a private individual. Because Waterman is not a governmental entity, is not a 501(c)(3) nonprofit, and because his office's Standing Trustee services do not fall within the definition of public interest legal services, the Department's decision is supported by the record evidence.

**A. Agency decisions must be affirmed under the Administrative Procedure Act (APA) unless they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.**

"[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). In reviewing agency action under the APA, the Court's review is generally limited to the administrative record. *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

---

[13] The government's de minimis payment of certain administrative expenses does not change this analysis, as no *legal services* or employee salaries are funded by the federal government, or any state or local government.

Under APA review, the Court may "hold unlawful or set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . [or] unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). *See also Prometheus Radio Project v. FCC*, 373 F.3d 372, 389 (3d Cir. 2004). The scope of review under the "arbitrary and capricious" standard is narrow. *Prometheus Radio Project*, 373 F.3d at 389.

Under this narrow standard of review, the court must ensure that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co. ("State Farm")*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). A court may set aside agency action where the agency (1) relied on factors that Congress has not intended it to consider, (2) entirely failed to consider an important aspect of the problem, (3) offered an explanation for its decision that runs counter to the evidence before the agency, or (4) offered an explanation so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *State Farm*, 463 U.S. at 43. *See also Prometheus Radio Project*, 373 F.3d at 390 (noting reversal is appropriate when decision is not supported by substantial evidence or agency has made a "clear error in judgment").

The deferential review standard in APA actions "presume[s] the validity of agency action." *SBC Inc. v. FCC*, 414 F.3d 486, 496 (3d Cir. 2005) (citation omitted).

And Courts should uphold a "decision [of] less than ideal clarity . . . if the agency's path may reasonably be discerned." *Alaska Dep't of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004). The question is whether the agency's decision is "within the bounds of reasoned decisionmaking." *Balt. Gas & Elec. Co. v. NRDC*, 462 U.S. 87, 105 (1983). If it is, then courts do not "substitute [their] judgment for that of the agency," but review the action to determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action[,] including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43.

**III.   The record evidence demonstrates that the Department's decision on Ramos-Cardona's PSLF Application is within the bounds of reasoned decisionmaking, based on substantial evidence, and was not arbitrary or capricious, and should therefore be upheld under the APA.**

1. <u>Public-Service Loan Forgiveness requires employment in a qualifying "public service job."</u>

When Congress created the PSLF, it provided that loan forgiveness for qualifying loans was available after 120 loan payments made while an individual is employed in a "public service job." 20 U.S.C. § 1087e(m)(1). The statute defines "public service job," as pertinent here, as,

> **(i)**   a full-time job in emergency management, government (excluding time served as a member of Congress), military service, public safety, law enforcement, public health (including nurses, nurse practitioners, nurses in a clinical setting, and full-time professionals engaged in health care practitioner occupations and health care support occupations, as such terms are defined by the Bureau of Labor Statistics), public education, social work in a public child or family service agency, public interest law services (including prosecution or public defense or legal advocacy on behalf of low-income communities at a nonprofit organization), early childhood education (including licensed or regulated

20

childcare, Head Start, and State funded prekindergarten), public service for individuals with disabilities, public service for the elderly, public library sciences, school-based library sciences and other school-based services, or at an organization that is described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from taxation under section 501(a) of such Code[.]

20 U.S.C. § 1087e(m)(3)(B)(i). Satisfying the requirements of a "public service job" is a prerequisite for loan forgiveness.

As part of the rulemaking process that Ramos-Cardona does not challenge in this lawsuit, the Department interpreted the statutory phrase "public service job" such that it would "define the types of organizations that would qualify as eligible employers for purposes of public service loan forgiveness," rather than the "specific job types that might qualify," and base eligibility for the forgiveness on the type of organization that employs the borrower." 73 Fed. Reg. 37,704, AR 13.

The Department therefore defined what categories of *employers* would qualify as public service organizations for purposes of PSLF as part of the rulemaking. *Id.*; *see also* 34 C.F.R. § 685.219(b). The Department further defined "qualifying employer" as encompassing five broad categories of organizations: (1) Federal, State, local, or Tribal government organizations, agencies, or entities, (2) public child or family service agencies, (3) non-profit organizations under 501(c)(3) that are not engaged in certain religious activities, (4) Tribal colleges and universities, and (5) nonprofit organizations that provide a non-governmental public services, including public interest legal services. 34 C.F.R. § 685.219(b) (definition of "qualifying employer" and "Non-governmental public service"). The regulations

define "public interest law" as "legal services that are funded in whole or in part by

a local, State, Federal, or Tribal government." *Id.*

The Department determined that Waterman's Office, providing Chapter 13

Standing Trustee bankruptcy estate management services, does not fall within any

of these categories. The Department's determination states as follows.

> Determination:
>
> 20-0720359 of SCOTT F WATERMAN confirmed by W2 in 08708645
> PA SOS confirms that SCOTT F WATERMAN is listed as a
> BUSINESS CORPORATION therefore is a For Profit organization.
> Uploaded.
> Linked to DB as Master
> FSA managed
> Eligibility Period: In Perpetuity. Ineligible: For Profit
> ProPublica: 0 RECORDS
> Additional Note: No results on TEOS or FAC

AR112. In reviewing this question, and summarizing the pertinent facts, a

Department attorney explained, "Chapter 13 trustees are not Federal employees

and are not paid by the Federal Government." AR0121. He elaborated, "[f]or

standing trustees, that compensation derives from fees that individual debtors pay

into the system, via court filing fees and the money paid into their Chapter 13

plans. Those working as, or employed by, the standing trustees' offices receive their

paychecks not from the federal government, but from the office they work for – a

private company." *Id.* He further explained, "[t]he Department of Justice website

declares that, "States [sic] Trustees appoint and supervise private trustees who

administer bankruptcy estates under chapters 7, 11, 12, and 13 of the Bankruptcy

Code. Private trustees are not government employees." *Id.* The attorney concluded,

"[t]hey do not receive any compensation from the government, instead collecting fees from debtors' Chapter 13 plans. 28 U.S.C. § 586(e)(1)." AR0121-122.

These conclusions are reasonable, and not arbitrary or capricious. *See State Farm,* 463 U.S. 43 (agency action will be upheld if the agency has examined the data relevant to its decision and can "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made,") (citation and internal quotation marks omitted).

Here, the Department applied the plain facts—Waterman's services, and the salaries of his employees, are not funded, in whole or in part, by the government, and therefore he is not a qualifying employer under the regulations. The regulations restrict eligibility for non-501(c)(3) organizations purportedly engaged in "public interest law" to those organizations where the *legal services* are funded in whole or in part by a local, State, Federal, or Tribal government. 34 C.F.R. § 685.219(b). Thus, the Department's conclusion is a simple and rational application of the underlying facts of Ramos-Cardona's application to the requirements of the PSLF regulations. *See ABA v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, (D.D.C. 2019) (noting that agency's interpretation of plain language of regulation was "reasonable on its face"). This decision withstands scrutiny, as set forth below.

    1.   <u>*Standing Trustees are not government employees.*</u>

The second time he submitted his PSLF employment certification form for his time working for Waterman, Ramos-Cardona checked the box certifying that Waterman was a "governmental organization." AR0025. Employees of governmental

organizations are eligible for PSLF. 20 U.S.C. § 1087e(m)(3)(B); 34 C.F.R. § 685.219.

But Waterman's Chapter 13 Standing Trustee Office is not a governmental

organization.

The United States Trustee for each region may appoint standing Chapter 13

trustees to administer Chapter 13 bankruptcy cases. *See* 28 U.S.C. § 586(b), 28

C.F.R. § 58.2. But "there is no doubt [standing trustees] are private parties, not

*government* employees." *United States v. Crispo*, 306 F.3d 71, 80 (2d Cir. 2002). *See*

*also Cal. State Bd. of Equalization v. Sierra Summit*, 490 U.S. 844, 849 (1989)

(noting that a bankruptcy trustee is "the representative of the estate of the debtor"

not "an arm of the Government" (internal alterations and quotation omitted)).

This information was available to the Department As the record reflects, a

Department employee reviewing Ramos-Cardona's PSLF application searched the

website of the U.S. Trustee's Office for additional information about standing

trustees. The U.S. Trustee's website makes clear in its Chapter 13 Standing

Trustees Office Locator search tool that standing trustees "are private parties, not

government employees." AR0054.

Ramos-Cardona concedes that Waterman is not a governmental entity or

organization, writing in his letter to the Department that, "while Standing Chapter

13 Trustees are *not technically federal employees*, they are heavily regulated by the

Department of Justice through the United States Trustee." AR0071 (emphasis

added). But this "technicality," as Ramos-Cardona phrases it, is determinative.

Standing trustees are not government employees.

Moreover, being subject to regulation by the government does not make a private party a governmental employer. *See Obsidian Fin. Grp., L.L.C. v. Cox*, 740 F.3d 1284, 1292-93 (9th Cir. 2014) ("Although bankruptcy trustees are 'an integral part of the judicial process,' neither [trustee] became public officials simply by virtue of [] appointment." (citation omitted)). *Cf., e.g., Bailey v. Harleysville Nat'l Bank & Tr.*, 188 F. App'x 66, 68 (3d Cir. 2006) ("[B]anks have been found not to be state actors, despite [their] extensive regulation, even when their complained-of actions have been explicitly authorized by the state. . . . Thus, the Bank is not a state actor by virtue of its regulation by the government …").

Accordingly, in evaluating Ramos-Cardona's PSLF application, the Department correctly concluded that his employer was not a qualifying governmental organization under the PSLF program and that Ramos-Cardona was not eligible for PSLF on this basis.

2. <u>*Standing Trustees are not otherwise qualifying employers.*</u>

Employers that are tax-exempt under Section 501(c)(3) of the Internal Revenue Code may qualify for the PSLF program.  34 C.F.R. § Under 26 U.S.C. § 501(a), certain organizations are exempt from taxation, with 501(c)(3) providing a list of exempt organizations.[14] In his first application, and in a later request for

---

[14] Section 501(c)(3) defines the following as tax-exempt organizations:

> Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or

reconsideration, Ramos-Cardona and Waterman asserted that Waterman's office is **not** tax-exempt under Section 501(c)(3) of the Internal Revenue Code, but claims it otherwise provides public interest legal services. AR0016, 0124.

Upon receipt of Ramos-Cardona's PSLF application, the Department's contractors first determined whether Waterman's employer identification number (EIN) existed within its database of previously approved employers. Waterman's EIN did not return a hit but instead was already listed as ineligible. *See* AR0109, AR0113. Nevertheless, Department employees conducted additional research to learn more about the organization of and funding source for Waterman's business.

A search of the PA Secretary of State website revealed that Waterman is listed as a "business corporation," a for-profit company. AR0112. Furthermore, searches for Waterman in public databases of non-profit entities, including ProPublica, TEOS (the IRS's Tax Exempt Organization Search), and FAC ( the Federal Audit Clearinghouse) revealed no results. Department employees also reviewed Waterman's website, www.readingch13.com. After reviewing these

---

for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

26 U.S.C.§ 501.

materials, the Department reasonably concluded, that Waterman is not a 501(c)(3) non-profit,  is a "private party," and is not an eligible employer.

### 3.  Standing Trustees are not engaged in public service law

"Non-profit organizations that do not qualify under section 501(c)(3)" of the IRC "may nonetheless qualify as a private organization that provides qualifying public services." 73 Fed. Reg. 63,243. Among those qualifying public interest services are "public interest law services (including prosecution or public defense or legal advocacy on behalf of low-income communities at a nonprofit organization)[.]" 20 U.S.C. § 1087e(m)(3)(b)(i). "Public interest law" is defined to refer to "legal services provided by a public service organization that are funded in whole or in part by a local, State, Federal, or Tribal government." 34 C.F.R. § 685.219(b).

Services provided by Standing Trustees are not funded by the government. Instead, Chapter 13 trustees receive funds for their compensation, their office's operating expenses, and the salaries of their staff from fees individual debtors pay into the system, via court filing fees and the money paid into debtors' Chapter 13 plans. 28 U.S.C. § 586(e). The collected fees are used by the standing trustee to pay his or her annual compensation and "actual, necessary expenses." *Id.* The Department had this information available in the administrative record and considered it. AR0062, AR0069 ("Per 28 U.S.C. § 586(e)(2), Standing Chapter 13 Trustees receive their funding from taking a percentage of the total receipts paid by the debtors each month… The percentage fee is calculated to be as low as possible to fund office expenditures, as all amounts remaining are disbursed to creditors of the Bankruptcy Estate."), AR0084-85.

In discussing the facts underlying Ramos-Cardona's denial, amidst one of his pending requests for reconsideration, a Department attorney noted that Chapter 13 trustees are not federal employees and do not receive compensation from the federal

government, but instead fund the operations of their offices and the salaries of their staff through fees assessed through debtors' Chapter 13 plans. AR0121-122.  As the Department explained during the course of creating the regulations underlying the PSLF, "the funding source of salaries are appropriate considerations." 73 FR 63232, 63243.

This reflects that the Department considered the relevant factors—the source of funding for the services provided, and correctly determined that the services provided by Chapter 13 standing trustees are not funded, in whole or in part, by the government. The Department thus concluded that these services are not funded by the government and do not fall within the definition of "public interest law."[15] This conclusion is not arbitrary or capricious, and must be upheld by this Court.

## IV.    Conclusion

"An agency's decision is in accordance with the law when it 'articulate[s] a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made.'" *CBS Corp. v. FCC*, 663 F.3d 122, 137 (3d Cir. 2011) (quoting *Burlington Truck Lines*, 371 U.S. at 168); *see also Maurice v. Trans Union, L.L.C.*, CIVIL ACTION NO. 20-5804, 2023 U.S. Dist. LEXIS 214276, at *7 (E.D. Pa. Nov. 30, 2023) (same). Given the information provided by Ramos-Cardona, and which the Department had available for its review, and the additional research

---

[15] Moreover, Chapter 13 Trustees are not providing legal services. Among the responsibilities of a Standing Trustee are investigating the financial affairs of the debtor, accounting for all property received during the administration of the estate, and making a final report of the administration of the estate. *Id.* Specifically excluded from a Standing Trustee's responsibilities is providing advice on legal matters. *See id.* at ¶ 9. Additionally, to be eligible to be appointed as a Standing Trustee, an individual may be, but is not required to be, an attorney. *See* 28 U.S.C. § 586(d), 28 C.F.R. § 58.3 and 58.4. Accordingly, while a Standing Trustee may employee attorneys—like Ramos-Cardona—he himself cannot be said to be engaged in the practice of law where he is not required to be an attorney and where he is prohibited from providing legal advice.

the Department conducted and had before it, the Department reasonably and rationally determined that private Chapter 13 Standing Trustees like Waterman are not qualifying employers under the PSLF program. The Department considered all relevant factors, and the record before the agency supports the Department's determination. *See State Farm*, 463 U.S. at 43.

Ramos-Cardona may disagree with this decision, and has argued that his employer is *close enough* to a qualifying employer that he should have received PSLF relief. However, he cannot meet his burden to show that the Department's decision was arbitrary or capricious. Rather, The Department's conclusion is reasonable on its face as a straightforward application of the regulation to Ramos-Cardona's employer, the standing Chapter 13 trustee. Because there is no clear error of judgment, and the Department engaged in rational decisonmaking, this Court should affirm the Department's determination and enter judgment in its favor.

July 1, 2025

DAVID METCALF
United States Attorney

*/s/ Gregory B. David/srb*
GREGORY B. DAVID
Chief, Civil Division

*/s/ Erin Lindgren*
ERIN LINDGREN
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Erin.Lindgren@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on July 1, 2025, I caused the foregoing motion to be filed with the Court

pursuant to the CM/ECF system, which will send notice electronically to all counsel of record.


*/s/ Erin Lindgren*
ERIN LINDGREN
Assistant United States Attorney