# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

ROLANDO RAMOS-CARDONA,   :
            :
     Plaintiff,    :
            :   Civil Action No. 5:24-cv-04073
  vs.         :
            :
UNITED STATES DEPARTMENT of :
EDUCATION       :                :
   and      :
LINDA McMAHON, *in her official* :
*capacity as Secretary of Education*, :
            :
     Defendants,   :

## ORDER

AND NOW, this   day of    , 2025, upon consideration of the parties' respective motions for summary judgment and the responses thereto, it is hereby **ORDERED** that the Motion of Plaintiff Rolando Ramos-Cardona is **GRANTED** and the Motion of the Defendant United States Department of Education (USED) is **DENIED**.

It is further **ORDERED** that:

1. The determination that Plaintiff is employed by a for-profit entity is set aside as arbitrary and capricious under 5 U.S.C. § 706(2)(A).

2. For purposes of Plaintiff's application for Public Service Loan Forgiveness (PSLF), Defendant is directed to classify Plaintiff's employment as a trial attorney in the Office of Scott F. Waterman, Chapter 13 Trustee as employment in the field of "public interest law services" under 20 U.S.C. § 1087e(m)(3)(B) and to classify his employer as a "qualifying employer" under 34 C.F.R. §685.219(b).

3. Plaintiff's PSLF application is **REMANDED** to Defendant for further proceedings in accordance with this Order.

                                      **BY THE COURT:**

                                      _____

                                      **CATHERINE HENRY, J.**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROLANDO RAMOS-CARDONA, | : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | Civil Action No. 5:24-cv-04073 |
| | : | |
| UNITED STATES DEPARTMENT of | : | |
| EDUCATION | : | : |
| and | : | |
| LINDA McMAHON, *in her official* | : | |
| *capacity as Secretary of Education*, | : | |
| | : | |
| Defendants, | : | |

**<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Rolando Ramos-Cardona,

moves for judgment on the administrative record against Defendants United States Department

of Education and Secretary of Education Linda McMahon.

For all the reasons set forth under the attached Statement of Facts and Memorandum of

Law, this Court should set aside, as arbitrary and capricious under 5 U.S.C. § 706(2)(A), the

determination by Defendants that, for purposes of Plaintiff's application for a Public Service

Loan Forgiveness (PSLF) of his federal student loan, that he is employed by a for-profit

company, and in its remand order, should instruct Defendants to classify his employer, Scott F.

Waterman, Chapter 13 Standing Trustee, as a "qualified employer" under 34 C.F.R. §

685.219(b).

Dated: July 1, 2025                          Respectfully submitted,

                                             /s/ Irv Ackelsberg
                                             Irv Ackelsberg
                                             LANGER, GROGAN & DIVER, PC

1717 Arch Street, Suite 4020
Philadelphia, PA 19144
(215) 320-5660
iackelsberg@langergrogan.com

Joshua Cohen
COHEN CONSUMER LAW, PLC
P.O. Box 1040
St. Albans, VT 05478
(860) 233-0338
jcohen@thestudentloanlawyer.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROLANDO RAMOS-CARDONA, | : | |
| | : | |
| Plaintiff, | : | |
| vs. | : | Civil Action No. 5:24-cv-04073 |
| | : | |
| UNITED STATES DEPARTMENT of | : | |
| EDUCATION | : | : |
| and | : | |
| LINDA McMAHON, *in her official* | : | |
| *capacity as Secretary of Education*, | : | |
| | : | |
| Defendants. | : | |


## PLAINTIFF'S STATEMENT OF FACTS AND
## MEMORANDUM OF LAW IN SUPPORT OF HIS
## MOTION FOR SUMMARY JUDGMENT

———————————————————

Irv Ackelsberg
LANGER, GROGAN & DIVER, PC
1717 Arch Street, Suite 4020
Philadelphia, PA 19144
(215) 320-5660
iackelsberg@langergrogan.com

Joshua Cohen
COHEN CONSUMER LAW, PLC
P.O. Box 1040
St. Albans, VT 05478
(860) 233-0338
jcohen@thestudentloanlawyer.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.    Introduction ............................................................................................................ 1

II.   Statement of Facts ................................................................................................. 3

    A.    A "Qualifying Employer" under the PSLF Program ................................. 3

    B.    Chapter 13 Standing Trustees Are Statutory Agents of the United States
        Trustee, Exercising a Governmental Role and Earning a Statutory Fee ............. 5

    C.    The Department's Arbitrary Determination that Trustee Waterman
        Is a "For-Profit," Nonqualifying, PSLF Employer that Was Based on
        Irrelevant Materials ............................................................................. 7

III.  Argument ............................................................................................................ 11

    A.    The Legal Standard ............................................................................ 11

    B.    The Department's Determination that a Federally Appointed Chapter 13
        Trustee Who Operates in Accordance with a Federally Approved Budget
        and Is Charged with Maintaining the Integrity of the Bankruptcy Process Is
        Employed by a For-Profit Entity Was Arbitrary and Capricious ...................... 12

        1.    The Department Entirely Failed to Consider the Nature of Plaintiff's
            Employment in Light of the Factors Congress Intended It to
            Consider and, Instead, Reached a Conclusion that Ran Counter to the
            Evidence ..................................................................................... 12

        2.    The Department Failed to Explain the Possible Inconsistency in Its
            Treatment of Similarly Situated Chapter 13 Trustees ............................. 14

        3.    As a Matter of Law, Plaintiff Is a Public Service Employee Who Is
            Entitled to Loan Forgiveness under the PSLF Mandate .......................... 15

            i.    The Department Has No Discretion but to Treat Plaintiff as a
                Worker in the Field of "Public Interest Law Services" ............... 16

            ii.   Under the Department's Own Regulation, a Chapter 13
                Trustee Is a "Qualified Employer" Either as a Governmental
                "Organization" or "Entity" or as a Nongovernmental, Nonprofit
                Organization that Provides Public Interest Law Services ............. 17

IV.   Conclusion ......................................................................................................... 20

# TABLE OF CITATIONS

Page(s)

**Cases**

*Alzokari v. Pompeo,*
   973 F.3d 65 (2d Cir. 2020) ................................................................................. 17

*American Bioscience, Inc. v. Thompson,*
   269 F.3d 1077 (D.C. Cir. 2001) ........................................................................... 12

*American Bar Association v. U.S. Department of Education,*
   370 F.Supp.3d 1 (D.D.C. 2019) ........................................................................ 4, 5

*Cedric Kushner Promotions, Ltd. v. King,*
   533 U.S. 158 (2001) .......................................................................................... 13

*Christ the King Manor, Inc. v. Secretary U.S. Department of Health & Human Services,*
   730 F.3d 291 (3d Cir. 2013) ..................................................................... 3, 11, 14

*City of Kansas City, Missouri v. Department of Housing & Urban Development,*
   923 F.2d 188 (D.C. Cir. 1991) ............................................................................ 14

*City of Philadelphia v. Sessions,*
   309 F. Supp. 3d 271 (E.D. Pa. 2018) .................................................................. 11

*El Rio Santa Cruz Neighborhood Health Center, Inc. v. Department of Health & Human Services,*
   300 F. Supp. 2d 32 (D.D.C. 2004) ...................................................................... 15

*Grayscale Investments LLC v. Securities and Exchange Commission,*
   82 F.4th 1239 (D.C. Cir. 2023) ........................................................................... 15

*Guertin v. United States,*
   743 F.3d 382 (2d Cir. 2014) ............................................................................... 17

*Hadwan v. United States Department of State,*
   No. 22-1624, 2025 WL 1560398 (2d Cir. June 3, 2025) ....................................... 11

*Hyland v. Navient Corporation,*
   48 F.4th 110 (2d Cir. 2022) .................................................................................. 4

*In re Chapter 13 Trustee's Motions,*
   666 B.R. 659 (B.A.P. 9th Cir. 2024) ................................................................ 6, 16

*In re Castillo,*
   297 F.3d 940 (9th Cir. 2002) ........................................................................... 6, 16

*In re Columbia Gas Systems Inc.,*
   33 F.3d 294 (3d Cir. 1994) .............................................................................. 6, 16

*In re Evans,*
   69 F.4th 1101 (9th Cir. 2023), *cert. denied sub nom. McCallister v. Evans,*
   —— U.S. ——, 144 S. Ct. 1004 (2024) ............................................................ 6, 16

*In re South Beach Securities, Inc.*,
   606 F.3d 366 (7th Cir. 2010) ............................................................................ 6

*Kingdom v. Trump*,
   No. 1:25-CV-691-RCL, 2025 WL 1568238 (D.D.C. June 3, 2025) ...................... 15

*Lawson-ross v. Great Lakes Higher Education Corporation*,
   955 F.3d 908 (11th Cir. 2020) .......................................................................... 4

*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) ....................................................................................... 17

*Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual
   Automobile Insurance Company*,
   463 U.S. 29 (1983) .................................................................................... 3, 11

*Richman v. Straley*,
   48 F.3d 1139 (10th Cir. 1995) ........................................................................... 6

*Smith v. United States Office of Personnel Management*,
   80 F. Supp. 3d 575 (E.D. Pa. 2014) ................................................................. 11

*Uddin v. Mayorkas*,
   862 F. Supp. 2d 391 (E.D. Pa. 2012) ................................................................ 11

*Westar Energy, Inc. v. Federal Energy Regulation Commission*,
   473 F.3d 1239 (D.C. Cir. 2007) ...................................................................... 15

**Statutes**

5 U.S.C. § 706 ......................................................................... 11, 14, 16, 17

11 U.S.C. § 101 ............................................................................................. 5

11 U.S.C. § 341(a) ........................................................................................ 6

11 U.S.C. § 1302(a)-(b) ............................................................................ 6, 16

20 U.S.C. §1087(e) ............................................................................... *passim*

28 U.S.C. § 586 .................................................................................... *passim*

College Cost Reduction and Access Act, Pub. L. No. 110-84, 121 Stat. 784 (2007) ................... 3

**Regulations**

34 C.F.R. § 685.219 .............................................................................. *passim*

**Other Authorities**

U.S. Department of Justice, Handbook for Chapter 13 Standing Trustees, Oct. 1, 2012, published
   at https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-13-
   handbooks-reference-materials ..................................................................... 10

iv

## I.    Introduction

The Public Service Loan Forgiveness (PSLF) benefit that Congress built into the federal student loan program is a powerful incentive for borrowers to consider employment in public service. It is a promise made to American workers burdened by student loan debt that if they make their required payments while employed in the public service sector and do so for 120 months, the remaining balance will be forgiven. *See* 20 U.S.C. § 1087e(m). Plaintiff Rolando Ramos-Cardona is a lawyer who accepted that offer, working for four years in the Office of the Pennsylvania Attorney General, followed by over six years as one of the two trial attorneys in the office of Scott F. Waterman, Chapter 13 Trustee Standing Trustee for this District, where he continues to serve in this capacity. Despite Plaintiff's having now completed his 120 payments, the Defendant United States Department of Education ("the Department") denied his PSLF application based on the unfounded determination that he has been employed by a "for profit" entity during the last six years. Flatly wrong. This determination is contrary to the relevant statute, contrary to the relevant regulation, inconsistent with determinations made for similarly situated chapter 13 standing trustees across the country, and unreasonably based on a single irrelevant fact that intruded into the Department's administrative consideration. The determination is arbitrary and capricious and should be reversed.

The chapter 13 standing trustees that operate in bankruptcy courts throughout the nation are not "for profit" in any sense. They are federal appointees who operate public service organizations that are creatures of federal law. For most part, they are financially self-sustaining through fees paid by chapter 13 debtors, but they also have a portion of their expenses paid for by the Federal Government. They employ a small staff of attorneys whose official duties include noticing and presiding over creditor meetings, monitoring the entire chapter 13 process, and

making recommendations to the bankruptcy court regarding key case decision points, such as plan confirmation and case dismissal or closing. Their salaries are set by the United States Trustee, who also must approve their office budgets and supervise their operation. Federal law actually prohibits the standing trustees from making a profit, as any excess revenue must be turned over to the U.S. Trustee.

By any reasonable reading of the PSLF statute, Plaintiff is employed in a "public service job," which, under the statutory definition, includes any employment whatsoever in government or in non-governmental "public interest law services (including prosecution or public defense)." 20 U.S.C. §1087e(m). Even though the Department's PSLF regulation is more restrictive and turns the eligibility focus from the nature of the student loan borrower's job to the characteristics of his employer, a chapter 13 standing trustee is a "qualifying employer" under the regulation. The regulation includes in the definition of "qualifying employer" any governmental "organization, agency, or entity," as well as any non-governmental, nonprofit organization that provides "public interest law services" and that is funded in whole or in part by government. 34 C.F.R. 685.219(b) (definitions of "qualifying employer," "non-governmental public service," and "public interest law"). Since chapter 13 standing trustee offices meet both definitions, it is not surprising that trial attorneys employed by these offices in many districts have been approved by the Department for PSLF loan forgiveness. The mystery of why, in contrast to other standing trustees performing the identical, federally mandated, public service functions, the Department adjudged Scott F. Waterman to be a "for profit" employer was only solved when the administrative record was filed in this case. Someone reviewing Plaintiff's application apparently discovered in an internet search the unremarkable fact that there is a registered corporate entity in Pennsylvania named Scott F. Waterman, P.C. There is nothing unusual or concerning in this

fact, given that, before his federal appointment to his official position, Mr. Waterman owned a private law firm. This fact has absolutely no bearing whatsoever as to whether Mr. Waterman, while performing his *current* official duties, is anything other than a public servant.

This is a textbook case of an "arbitrary and capricious" decision, made with no reasonable basis. The Department "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, [and] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.,* 730 F.3d 291, 305 (3d Cir. 2013) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)) It should be set aside. Considering the text and purpose of the statutory program, there is no reasonable basis for denying Plaintiff the loan forgiveness he was promised and upon which he relied. His remaining student loan obligation should be forgiven.

## II.    Statement of Facts

### A.  A "Qualifying Employer" under the PSLF Program

Codified at 20 U.S.C. § 1087e(m), Congress established the PSLF Program in 2007 as part of the College Cost Reduction and Access Act, Pub. L. No. 110-84, 121 Stat. 784. It required the Department to forgive the federal student loans of borrowers who make monthly loan payments for ten years while employed in "public service," defined as covering "a full-time job in ... government ..., public education ..., public interest law services (including prosecution or public defense or legal advocacy on behalf of low-income communities at a nonprofit organization) ..., [and] public service for individuals with disabilities." 20 U.S.C. §

3

1087e(m)(3)(B).[1] *See American Bar Ass'n v. U.S. Department of Education ("ABA v. Dept.")*, 370 F.Supp.3d 1, 11 (D.D.C. 2019); *see also Hyland v. Navient Corp.,* 48 F.4th 110, 114 (2d Cir. 2022); *Lawson-ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908, 911 (11th Cir. 2020).

A year later in 2008, the Department further defined program eligibility criteria and set forth the procedures through which a borrower may apply for loan forgiveness under the program. *See* 34 C.F.R. § 685.219. "The regulation defines the statutory term 'employed in a public service job,' 20 U.S.C. § 1087e(m)(1)(B), to require that an eligible borrower be 'hired and paid by a public service organization,' 34 C.F.R. § 685.219(b)." *ABA v. Dept.,* 370 F. Supp. 3d at 11–12. This means that, according to the regulation, a borrower's eligibility is determined not by his job responsibilities, but rather on the eligibility status of his employer. *Id*.

The regulation defines a "qualifying employer" as including any governmental "agency" or "entity," as well as a nonprofit organization that provides "a non-governmental public service [that i]s not a business organized for profit, a labor union, or a partisan political organization." 34 C.F.R. § 685.219(b) (def'n of "qualifying employer", at (i) and (v)). "Non-governmental public service means services provided by employees of a non-governmental qualified employer where the employer has devoted a majority of its full-time equivalent employees to working in" several enumerated areas, including "public interest law services." *Id*. (def'n of "non-governmental

---

[1] The statutory eligibility requirements are that:
   a. The loan is not in default;
   b. The borrower has made 120 monthly payments since October 1, 2007 on an eligible Federal Direct Loan;
   c. The borrower has been employed in a "public service job" at the time he made each of the 120 monthly payments; and
   d. The borrower is employed full-time in a "public service job" at the time of the forgiveness.
20 U.S.C. §1087e(m)(1).

public service").[2]  To be a qualifying provider of "public interest law services" the entity must be

funded, at least "in part," by government. 34 C.F.R. § 685.219(b) (def'n of "public interest law

services").

The Department utilizes an employer certification process that enables student loan

borrowers to submit information about their employers in order to obtain "qualifying employer"

decisions over the course of the 10-year PSLF period. *See A.B.A. v. Dept.*, 370 F.Supp.3d at 12.

The Department recommends that borrowers submit these certifications either annually or

whenever changing employers. *Id*. The Department relies on private loan-servicer contractors for

the initial processing of PSLF applications,[3] although employer qualification decisions regarding

non-501(c)(3) not-for-profit organizations are made entirely by Department staff. *Id*. at 13. After

completing 120 eligible monthly payments, borrowers may apply for loan forgiveness through a

separate application. *Id*.

### B.  Chapter 13 Standing Trustees Are Statutory Agents of the United States Trustee, Exercising a Governmental Role and Earning a Statutory Fee

According to its published mission statement, the Office of the United States Trustee is a

"component of the Department of Justice responsible for overseeing the administration of

bankruptcy cases and private trustees under 28 U.S.C. § 586 and 11 U.S.C. § 101, *et seq*., …

with broad administrative, regulatory, and litigation/enforcement authorities whose mission is to

promote the integrity and efficiency of the bankruptcy system for the benefit of all stakeholders–

debtors, creditors, and the public." https://www.justice.gov/ust. The office was established with

---

[2] The nonprofit employer need not be a tax-exempt 501(c)(3) organization, as that is a separate
category of qualifying employers. *See* 34 C.F.R. § 685.219(b) (def'n of "qualifying employer",
at (iii)).

[3] During the relevant period, Plaintiff's federal student loan was serviced by an organization
named MOHELA that also conducted the initial processing of his PSLF application.

the enactment of the Bankruptcy Code in order to relieve the bankruptcy judges of certain

administrative matters they were responsible for under the pre-existing bankruptcy system. *See*

*In re Columbia Gas Sys. Inc.*, 33 F.3d 294, 295–96 (3d Cir. 1994). Under 28 U.S.C. § 586, the

U.S. Trustee functions as the "guardian of the public interest." *In re S. Beach Sec., Inc.*, 606 F.3d

366, 371 (7th Cir. 2010).

 Among the responsibilities of the U.S. Trustee is the job of supervising the administration

of all chapter 13 cases. 28 U.S.C. § 586(a)(3). If the volume of chapter 13 filings so warrants,

however, and subject to the approval of the Attorney General, the U.S. Trustee may appoint and

supervise one or more "standing trustees" to carry out this function on his behalf in a particular

district. 28 U.S.C. § 586(b). Currently, in this district there are two chapter 13 standing trustees,

Scott F. Waterman and Kenneth E. West. *See* https://www.justice.gov/ust/list-chapter-13-

standing-trustees.  Like all chapter 13 standing trustees, Mr. Waterman serves in this official

capacity at the pleasure of the U.S. Trustee and the Attorney General. *See Richman v. Straley*, 48

F.3d 1139, 1143 (10th Cir. 1995). Some of his official acts, such as the scheduling, noticing of,

and presiding over meetings of creditors under 11 U.S.C. § 341(a), are protected by quasi-

judicial immunity. *See Curry v. Castillo (In re Castillo)*, 297 F.3d 940 (9th Cir. 2002).

 The additional responsibilities of a chapter 13 standing trustee are set forth in 11 U.S.C. §

1302(a). "Among other things, the trustee collects the debtor's payments, ensures that payments

are timely made to creditors, and objects (when necessary) to plan confirmation." *Evans v.*

*McCallister (In re Evans)*, 69 F.4th 1101, 1104 (9th Cir. 2023) (listing some of those enumerated

administrative responsibilities), *cert. denied sub nom. McCallister v. Evans*, ⸻ U.S. ⸺, 144

S. Ct. 1004 (2024). The standing trustee's role in a chapter 13 case is "akin to that of the

administrative prosecutor." *In re Chapter 13 Tr.'s Motions for Declaratory Relief Challenging*

*Constitutionality of 28 U.S.C. § 586(e) & 11 U.S.C. § 1326(b)(2)*, 666 B.R. 659, 669 (B.A.P. 9th Cir. 2024) (and further noting, at 666, that without the chapter 13 trustee's assistance, the bankruptcy court could not execute its independent obligation, to ascertain that all plan confirmation requirements are met, even in the absence of any creditor objection).

A chapter 13 standing trustee is paid a salary that is fixed by the Attorney General at "an amount not to exceed the highest annual rate of basic pay in effect for level V of the Executive Schedule," and "the cash value of employment benefits comparable to the employment benefits provided by the United States to individuals who are employed by the United States at the same rate of basic pay to perform similar services during the same period of time." 28 U.S.C. § 586(e)(1)(A). To cover that compensation and "the actual, necessary expenses incurred by such individual as standing trustee," the Attorney General also sets an annual percentage fee that the standing trustee can collect from the payments made by chapter 13 debtors under the plans. 28 U.S.C. §§ 586(e)(1)(B). The standing trustee is prohibited from earning any profit; to the extent the funds generated by the approved percentage fee exceed the approved compensation and the actual expenses of the office, the standing trustee must pay that excess to the U.S. Trustee System Fund. 28 U.S.C.§ 586(e)(2).

### C. The Department's Arbitrary Determination that Trustee Waterman Is a "For-Profit," Nonqualifying, PSLF Employer that Was Based on Irrelevant Materials

On September 13, 2022, Plaintiff submitted a PSLF loan application and two employer certifications to MOHELA. RRC_AR0013. The first certification was from his previous employer, the Office of the Pennsylvania Attorney General, which confirmed that he worked there full-time for the four years from January 2014 through the end of 2017. AR0014. The second one was completed by Mr. Waterman, who certified that (a) he runs a non-for-profit organization that is neither a union or partisan political organization, (b) that he provides "public

interest law services" and (c) that Plaintiff had been his full-time employee since January 2018. AR0016. Waterman also provided copies of his Appointment and Approval from the Department of Justice, as well as a copy of a memorandum from DOJ to all Chapter 13 Trustees notifying them that IRS had agreed to classify trustee operations as non-taxable. AR0017-19. Finally, Plaintiff's submission also included a copy of his 2021 W-2, listing his employer as "Scott F. Waterman, 2901 St. Lawrence Ave., Suite 100, Reading, PA 19605-2265" with an EIN of 20-0720359. AR0020. A week later, on September 20, 2022, Plaintiff submitted a second employer certification from Trustee Waterman, this one presenting the alternative argument that the chapter 13 trusteeship that employed the Plaintiff was a governmental organization. AR0025.

On March 31, 2023, MOHELA informed Plaintiff that it had approved his 48 months of employment with the Pennsylvania Attorney General for PSLF credit. AR0040-43. By August 2023, he was informed that the remainder of this application—presumably the employer certification from Trustee Waterman—was still under review. AR0044. On November 2, 2023 someone with either MOHELA or the Department conducted an internet "Business Search" on the website of the Pennsylvania Department of State, looking for any business associated with the name Scott F. Waterman, and came up with a 2015 filing by a corporation named Scott F. Waterman, PC, with an address of 110 W. Front Street, Media PA 19063 and a president named Scott F. Waterman. AR0046.[4]

---

[4] The First Updated Certification by Nikki Bowman, the Department's Supervisory Program Management Analyst, ECF 25-1, states that, with the exception of some Department emails, the other components of the Administrative Record originate either from the Department or its contractors MOHELA and Accenture. The Certification does not provide further details regarding the identity of the persons who conducted the Business Search, screenshots of which appear multiple times in the Administrative Record.

It is not clear from the Administrative Record when the Department issued its initial decision denying the employer eligibility of the Waterman trustee office,[5] although the limited basis for that determination is clear. On February 2, 2024, MOHELA sent a letter to Plaintiff stating, "We determined that your employer is a for-profit organization, which does not qualify for PSLF." AR0119.[6] The Record also reveals that this conclusion was based entirely on the existence of the registration for the corporate entity, Scott F. Waterman, P.C. *See* AR018 ("Confirmed by DB that SCOTT F. WATERMAN, P.C. is an Ineligible For Profit company"). In other words, the adverse action on Plaintiff's PSLF application was based on the erroneous assumption that Plaintiff's employer was Scott F Waterman, P.C.

Apparently, no one involved in reaching this conclusion saw any reason to distinguish between Scott F. Waterman—the individual with an office in Reading officially appointed to serve as Standing Trustee effective January 2019—and the corporate entity "Scott F. Waterman, P.C.,"—with an office in Media and registered with the Commonwealth in 2015. Nor, apparently, did anyone bother to inquire further with Mr. Waterman as to what, if any, relation existed between the corporate entity in Media and the federally appointed and supervised trusteeship based in Reading. In actuality, there is no relevant connection. As set forth in the Affidavit of Scott F. Waterman, submitted with this Memorandum, the pertinent facts are that:

---

[5] Part of the difficulty in arranging the Administrative Record into a chronological narrative is that, as explained in the Bowman Certification, ECF 28-1, some of the record consists of Word documents she created by cutting and pasting information from the Department's web portals, many of which include no dates.

[6] There appears to have been an earlier decision since the Record also references a request for reconsideration that was "closed" on November 17, 2023, AR0074, but the February 24, 2024 letter is the only notice to Plaintiff in the Administrative Record. Plaintiff's original Complaint included a copy of an email from the Department to the Plaintiff dated March 18, 2024, advising him that "Your Employer Is Not Eligible for . . . PSLF," with a stated reason of "For Profit Organizations." ECF 1-6. The Department did not include this email but it is referenced in the Record at AR0074.

- prior to his appointment to his trustee position, he had been operating a private law firm named Scott F. Waterman, P.C. at the Media address;
- when he assumed his official duties out of an office in Reading, the law firm in Media ceased doing business; and
- the EIN for the trustee operation in Reading (20-0720359) is different from the EIN for the no longer operational law firm in Media (47-3576826).

Waterman Affidavit ¶¶ 4-7.

The Department never informed Plaintiff of its erroneous factual assumption that these two distinct employer entities were one and the same, so Plaintiff's reconsideration efforts didn't attempt to correct the Department's factual error. Instead, Plaintiff's request for reconsideration raised the numerous factors demonstrating the nonprofit character of chapter 13 trusteeships and the governmental and public service nature of the legal work he performs, including excerpts from the *Handbook for Chapter 13 Standing Trustees*, published by the Department of Justice, *available online* at https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-13-handbooks-reference-materials (hereafter "the *Handbook*"), which contains the policies and procedures that all of the nation's chapter 13 trustees must follow, as well as a memorandum from the Department of Justice announcing that the chapter 13 trusteeships are nontaxable entities. *See* AR0069-107. He also submitted a supplemental letter from Mr. Waterman, dated February 28, 2024, that, among other things, listed eight chapter 13 standing trustees who had been approved as qualifying PSLF employers, AR0124-28, a number that has grown to thirteen. *See* Waterman Affidavit ¶ 9c. These efforts at getting the agency to reconsider its action were unsuccessful. *See, e.g.*, AR0113 ("The employer remains ineligible and the reason for ineligibility is "for profit" and no documentation provided that warrants a change in eligibility determination.").

III.    **Argument**

A.  **The Legal Standard**

Under section 706 of the APA, a reviewing court "*shall . . .* hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (emphasis added). An action or decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.,* 730 F.3d 291, 305 (3d Cir.2013) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)). *See, e.g., Hadwan v. United States Dep't of State*, No. 22-1624, 2025 WL 1560398, at *1 (2d Cir. June 3, 2025) (setting aside State Department's revocation of passport for failure to adequately consider material, undisputed facts about the plaintiff's English language literacy that raised doubts as to the reliability of his alleged confession statement); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 271 (E.D. Pa. 2018) (denying Attorney General's motion to dismiss APA claim that imposition of a condition related to immigration enforcement cooperation in formula-based federal law enforcement grants was arbitrary and capricious); *Smith v. U.S. Off. of Pers. Mgmt.*, 80 F. Supp. 3d 575 (E.D. Pa. 2014) (setting aside OPM's denial of addiction treatment benefits to a federal employee).

Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record. *Uddin v. Mayorkas*, 862 F. Supp. 2d

391, 399 (E.D. Pa. 2012) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)).

### B. The Department's Determination that a Federally Appointed Chapter 13 Trustee Who Operates in Accordance with a Federally Approved Budget and Is Charged with Maintaining the Integrity of the Bankruptcy Process Is Employed by a For-Profit Entity Was Arbitrary and Capricious

#### 1. The Department Entirely Failed to Consider the Nature of Plaintiff's Employment in Light of the Factors Congress Intended It to Consider and, Instead, Reached a Conclusion that Ran Counter to the Evidence

There is literally *no* evidence in the Administrative Record supporting the Department's conclusion that Plaintiff is employed by a for-profit organization. The undisputed evidence is that he works as a trial attorney for Chapter 13 Standing Trustee Scott F. Waterman, one of the two chapter 13 standing trustees serving in this District and that this employer is a not-for-profit organization. Indeed, the nonprofit character of this unique employer is established by federal law itself, namely 28 U.S.C. § 586(e). Mr. Waterman, like all the other standing trustees in this program administered by the United States Trustee—a division of the Department of Justice—operates in accordance with that statute and DOJ's *Handbook* (excerpts of which are in the Administrative Record, AR0062-72, 0078-98). *See* Waterman Affidavit ¶ 9(d). His salary is fixed by the Attorney General so as not to exceed a specified level of federal executives' pay and benefits, 28 U.S.C. § 586(e)(1). To cover that compensation and the "actual, necessary expenses" of the trustee operation, the Attorney General sets an annual percentage fee that Waterman can collect from the payments made by chapter 13 debtors under the plans. 28 U.S.C. §§ 586(e)(1)(B). Waterman *is prohibited from* earning any profit; to the extent the funds generated by the approved percentage fee exceed the approved compensation and the actual expenses of the office, he must pay that excess to the U.S. Trustee System Fund. 28 U.S.C.§ 586(e)(2).

Despite all that evidence to the contrary, the Department reached the bewildering and unexplained conclusion that Waterman is a "for profit" employer. From the Administrative Record, it appears that what convinced the Department to ignore the Bankruptcy Code, which authorized the creation of the office of standing trustee, and the *Handbook*, which dictates its operations, was the entirely irrelevant fact, discovered in an internet search conducted by someone involved in processing Plaintiff's claim, that there exists in the database of the Commonwealth's Department of State a corporate registration filing in 2015 of an entity located in Media, PA, named Scott F. Waterman, P.C. It appears from the produced screenshot that the internet search that turned up the existence of the Waterman corporate entity occurred on November 2, 2023. AR0046. While this discovery should have been regarded as completely irrelevant to Plaintiff's PSLF application, the screenshot seems to have worked itself up the chain to a decision maker, who apparently redid the same irrelevant web search on January 29, 2024, days before the February 2, 2024 adverse decision letter, AR0119, was mailed to Plaintiff.[7]

As a matter of black letter law, a corporate entity bearing the name of an individual owner is a legally distinct entity from that individual. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs"). However, even though the denial issued to Plaintiff was reviewed by two Department lawyers, *see* AR0122 (email from Brian

---

[7] The fact that the business search was conducted a second time can be inferred from the outputs of the two searches. *Compare* AR0046 ("As of 11/02/2023 we have processed all business filings received in our office through 10/9/2024.") *with* AR0056 ("As of 01/29/2024 we have processed all business filings received in our office through 01/22/2024.")

Siegel, noting, "I am working with a new attorney on our staff to finalize our analysis") and ECF 28-1 (Department affidavit identifying the two attorneys as Karen Bauer and Brian Siegel), the "for profit" determination was approved, apparently concluding that the structure of Waterman's defunct law firm should be attributed to Waterman's active federal trusteeship.[8]

By failing to consider the inherent not-for-profit nature of a chapter 13 standing trustee, and, instead, concluding that Plaintiff is employed by a for-profit "company" the Department "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, [and] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Christ the King Manor,* 730 F.3d at 305; *also see City of Kansas City, Mo. v. Dep't of Hous. & Urb. Dev.*, 923 F.2d 188, 194 (D.C. Cir. 1991) ("Agency action based on a factual premise that is flatly contradicted by the agency's own record does not constitute reasoned administrative decision-making, and cannot survive review under the arbitrary and capricious standard"). This alone warrants the setting aside of the Department's action, pursuant to 5 U.S.C. § 706(2)(A).

### 2.  The Department Failed to Explain the Possible Inconsistency in Its Treatment of Similarly Situated Chapter 13 Trustees

In his effort to get the Department to reconsider its flawed characterization of his employer as a for-profit company, Plaintiff submitted a letter from Mr. Waterman, listing the names of eight similarly-situated standing trustees who had been qualified as PSLF-eligible

---

[8] Attorney Siegel went so far as to characterize the standing trustee as "a private company." AR0121. The Record also demonstrates that, despite the repeated reference to the EIN number on Plaintiff's W-2 during the processing of his claim, no one bothered to inquire whether the Waterman professional corporation paid its employees under the same EIN. Had anyone at MOHELA or the Department posed that question to Waterman, he could have shown them that the corporation had a different EIN. *See* Waterman Affidavit (attaching copy of the IRS assignment of a different EIN to Scott F. Waterman, P.C.).

employers. AR0124-5.[9] Yet there is nothing in the Record indicating any consideration by the Department of this possible disparate application of the PSLF program rules. "[A]n agency action may earn the moniker of 'arbitrary and capricious' if it violates the 'fundamental principle of administrative law that agencies must treat like cases alike,' and fails to 'point to a relevant distinction' between two facially similar cases that it decides to treat differently." *Kingdom v. Trump*, No. 1:25-CV-691-RCL, 2025 WL 1568238, at *9 (D.D.C. June 3, 2025) (quoting *Grayscale Invs., LLC v. SEC*, 82 F.4th 1239, 1242 (D.C. Cir. 2023) and *Westar Energy, Inc. v. Fed. Energy Regul. Com'n*, 473 F.3d 1239, 1241 (D.C. Cir. 2007)); *see also El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. Dep't of Health & Hum. Servs.*, 300 F. Supp. 2d 32, 42–43 (D.D.C. 2004), *aff'd sub nom. El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265 (D.C. Cir. 2005).

Given that the U.S. Trustee's chapter 13 standing trustee program is a national one that must comply with 28 U.S.C. §586(e) and must operate in conformity to the Department of Justice-issued *Handbook*, there could be no meaningful distinction in the application of the PSLF "qualifying employer" rules among different individual trustee offices within the program. Thus, the information provided by the Plaintiff regarding a possible unexplained inconsistency in the handling of PSLF applications should not have been ignored by the Department. Accordingly, in the event of a remand, the Department should be required to explain if its "qualifying employer" analysis is being uniformly applied among chapter 13 standing trustees, as well as any reason why some trustees have been approved and others not.

### 3. As a Matter of Law, Plaintiff Is a Public Service Employee Who Is Entitled to Loan Forgiveness under the PSLF Mandate

---

[9] According to Waterman, that number is now thirteen. Waterman Affidavit, ¶ 9c.

### i.  The Department Has No Discretion but to Treat Plaintiff as a Worker in the Field of "Public Interest Law Services"

Under the statute that enacted the PSLF program, a student loan borrower who makes 120 monthly payments while working in "a full-time job in ... government [or] public interest law services (including prosecution or public defense or legal advocacy on behalf of low-income communities at a nonprofit organization)" is entitled to loan forgiveness of the remaining balance. 20 U.S.C. § 1087e(m)(3)(B). There should be no doubt that Plaintiff's service, as the full-time trial attorney for Standing Trustee Waterman, Plaintiff is employed in "public interest law services" within the meaning of the PSLF statutory provision. The role of the chapter 13 standing trustee in a consumer reorganization is "akin to that of the administrative prosecutor." *In re Chapter 13 Tr.'s Motions*, 666 B.R. at 669. He or she notices and presides over the meeting of creditors, a function "closely associated with the judicial process," *see In re Castillo*, 297 F.3d at 948; investigates the financial affairs of the debtor and, if appropriate, objects to creditor claims, 11 U.S.C § 1302(b)(1) (incorporating trustee powers under § 704(a)); "collects the debtor's payments, ensures that payments are timely made to creditors, and objects (when necessary) to plan confirmation," *Evans v. McCallister (In re Evans)*, 69 F.4th 1101, 1104 (9th Cir. 2023); and "may appear and be heard *on any issue in any case or proceeding* under [chapter 13]." *Columbia Gas Sys.*, 33 F.3d at 296 (emphasis in original, citing legislative history of the Bankruptcy Code). Indeed, within a chapter 13 case, the role of the standing trustee is, essentially, the "guardian of the public interest." *In re S. Beach Sec., Inc.*, 606 at 371.

Under section 706 of the APA, "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law [and] interpret . . . statutory provisions, 5 U.S.C. § 706, and "[shall] hold unlawful and set aside agency action, findings, and conclusions found to be ... not in accordance with law." § 706(2)(A). "The APA thus codifies for

agency cases the unremarkable, yet fundamental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment. It specifies that courts, not agencies, will decide '*all* relevant questions of law' arising on review of agency action, § 706 (emphasis added)—even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391–92 (2024).

When Plaintiff appears daily in the Bankruptcy Court as trial counsel for Trustee Waterman is clearly practicing law in the public interest. Because he is employed in "public service law services," as Congress intended that term to mean, the remand here should direct the Department to treat him as such and to process his PSLF application accordingly. *See, e.g., Alzokari v. Pompeo*, 973 F.3d 65, 73 (2d Cir. 2020) (in setting aside passport revocation, determining that no remand was necessary since, as a matter of law, a citizen does not commit passport fraud by applying for a passport under the name and birthdate appearing on his uncontested citizenship and identity documents); *Guertin v. United States*, 743 F.3d 382, 388–89 (2d Cir. 2014) (declining to remand to the agency because "there is compelling evidence in the record—a record that would not change if remanded to the agency," that plaintiff is entitled to the relief sought).

### ii. Under the Department's Own Regulation, a Chapter 13 Trustee Is a "Qualified Employer" Either as a Governmental "Organization" or "Entity" or as a Nongovernmental, Nonprofit Organization that Provides Public Interest Law Services

Having reached the erroneous conclusion that Plaintiff is employed by a for-profit organization, the Department conducted no further application of the facts regarding the nature of Plaintiff's employer to its own definition of public service employment under 34 C.F.R. §

685.219. Putting aside that arbitrary and capricious determination, a chapter 13 standing trustee is a "qualified employer" under alternative categories in the PSLF regulation.

A governmental "organization, agency, or entity" is a "qualified employer" regardless of the work or duties performed. 34 C.F.R. § 685.219(b) (def'n of "qualified employer" at (i)). Under this definition, the U.S Trustee lawyers appearing in a chapter 11 case are PSLF-eligible because the Office of the U.S. Trustee is a part of the Department of Justice. While a standing trustee is not a federal "agency," he has an official statutory status and performs official statutory duties that are sufficiently infused with a governmental nature so as to be classified as a federal "organization" or "entity." Under this interpretation, the PSLF application of a student-loan-burdened attorney employed by a chapter 13 trustee would be appropriately treated the same as one employed by the U.S. Trustee.

The standing trustees are appointed by the U.S. Trustee, subject to approval of the Attorney General, and they serve at the pleasure of and are supervised by the U.S. Trustee. 28 U.S.C. §586(b). In a chapter 13 case, their duties are those of the U.S. Trustee under 28 U.S.C. § 586. Their salary is fixed by the Attorney General so as to be commensurate with equivalent federal employees. 28 U.S.C. § 586(e)(1). The Attorney General also annually fixes the fees they can charge chapter 13 debtors. *Id*. They operate in accordance with procedures dictated by the Attorney General, 28 U.S.C. § 586(e)(4), which are set forth in the *Chapter 13 Trustee Handbook*.

In a context very similar to this one, the National Labor Relations Board has determined that a chapter 13 standing trustee is "an administrative unit of the Federal government." Jose Carrion, Chapter 13 and 12 Trustee for Puerto Rico and the Virgin Islands and Union de Tronquistas de Puerto Rico, Local 901, NLRB Region 24, Case No. 24-RC-8374 (determining

18

that employees of a standing trustee office are not subject to NLRB jurisdiction because they fall

within the political subdivision exemption of the National Labor Relations Act) (copy of

Decision and Order attached hereto). An "administrative unit of the Federal Government" would

obviously be a governmental "organization" or "entity" under 34 C.F.R. § 685.219(b).

Alternatively, a chapter 13 standing trustee is a "nonprofit organization that [p]rovides a

non-governmental public service." 34 C.F.R. § 685.219(b) (def'n of "qualifying employer" at

(v)). Under the regulation, "Non-governmental public service includes "public interest law

services," but that term is limited to situations where the employer is funded, at least "in part,"

by government. 34 C.F.R. § 685.219(b) (def'ns of "Non-governmental public service" and

"public interest law services"). Since Trustee Waterman does receive indirect federal financial

support, *see* Letter (with attached exhibits) from Scott F. Waterman, 2/28/2024 (AR0124-60),[10]

the arguably invalid additional condition that he be, at least, in-part governmentally funded, is

met anyway.[11] Therefore, since Plaintiff meets both the statutory and regulatory definitions of

---

[10] As described by Trustee Waterman in this submission to the Department in support of
Plaintiff's claim,

> Many of the Chapter 13 Trustees' operating expenses are paid for and
> funded by the Federal government. For example, the Federal government pays
> for the printing and mailing of all of our Notices of Meetings of Creditors which
> also contain filing deadlines. The Federal government also pays for the cost of
> our video conferencing systems used for all meetings of creditors required in
> every case. A copy of the License issued by the Federal Government confirming
> that it pays for my 341 Bankruptcy meetings is attached as Exhibit "D." The
> Federal government also pays for the costs of all interpreters required for
> meetings of creditors. Finally, the Federal Government pays the costs, through
> PACER for electronic noticing of all parties on the bankruptcy court docket.

AR0127.

[11] Plainly, the regulation's requirement that the employer of the student loan borrower
performing "public interest law services" be at least in-part governmentally funded has no
reasonable connection to the statutory definitions of either "public service job" or "public
interest law services" in 20 U.S.C. §1087(e). The latter is defined non-restrictively as *including*
"prosecution or public defense or legal advocacy on behalf of low-income communities at a
nonprofit organization." The standing trustee's duties in a chapter 13 to assist the court and to

qualifying public service employment, his employment is qualified for PSLF treatment, as a matter of law.

## IV.    Conclusion

For all these reasons, this Court should set aside, as arbitrary and capricious, the determination by the Defendant Department of Education that Plaintiff is employed by a for-profit company. And, since his employment qualifies him for PSLF treatment as a matter of law, the remand should direct the Department to classify his employer as a "qualified employer" under 34 C.F.R. § 685.219(b).

Dated: July 1, 2025                                      Respectfully submitted,

                                                                /s/ Irv Ackelsberg
                                                                Irv Ackelsberg
                                                                LANGER, GROGAN & DIVER, PC
                                                                1717 Arch Street, Suite 4020
                                                                Philadelphia, PA 19144
                                                                (215) 320-5660
                                                                iackelsberg@langergrogan.com

                                                                Joshua Cohen
                                                                COHEN CONSUMER LAW, PLC
                                                                P.O. Box 1040
                                                                St. Albans, VT 05478
                                                                (860) 233-0338
                                                                jcohen@thestudentloanlawyer.com

                                                                Attorneys for Plaintiff

---

protect the public interest and integrity of the bankruptcy process is in the nature of "prosecution" and "public defense." Even if trustee offices were not indirectly subsidized by the U.S. Trustee, the nature of their role in the bankruptcy system would meet the statutory definition in the PSLF provision.

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 24**

| | |
|---|---|
| JOSE CARRION, CHAPTER 13 AND 12, TRUSTEE FOR PUERTO RICO AND THE U.S. VIRGIN ISLANDS[1]<br><br>      Employer<br><br>and<br><br>UNION DE TRONQUISTAS DE PUERTO RICO, LOCAL 901<br><br>      Petitioner | Case 24-RC-8374 |

**DECISION AND ORDER**

Upon a Petition duly filed under Section 9(c) of the National Labor Relations Act, as amended, herein the Act, a hearing was held before a hearing officer of the National Labor Relations Board, herein the Board, to determine whether a question concerning representation exists, and if so, to determine an appropriate unit for collective bargaining.   Pursuant to the provisions of Section 3(b) of the Act, the Board has delegated its authority in this proceeding to the undersigned.

Upon the entire record in this proceeding, the undersigned finds:[2]

1.       The hearing officer's rulings made at the hearing are free from prejudicial error and are hereby affirmed.

2.       The parties stipulated and I find that the Employer is engaged in

---

[1]The name of the Employer appears as amended at the hearing.

[2]The Employer filed a brief which has been carefully considered.  No other briefs were filed.

commerce within the meaning of the Act.[3]

3.      The parties stipulated and I find that Petitioner is a labor organization within the meaning of Section 2(5) of the Act.

4.      Petitioner claims to represent employees in the following units which total approximately 37 employees, which the parties have stipulated are appropriate.  In this regard the parties agreed that the professional employees would be accorded the option to vote as to whether they wish to be separately represented or included in the unit of non-professionals.

**Unit A**

INCLUDED: All regular full-time and part-time employees, including clerks, technicians, data entry employees, office employees, and receptionists employed by the Employer at its San Juan, Puerto Rico facility.
EXCLUDED: All other employees, confidential employees, guards and supervisors as defined by the Act.

**Unit B**

INCLUDED: All regular full-time and part-time professional employees employed by the Employer at its San Juan, Puerto Rico facility.
EXCLUDED: All other employees, confidential employees, guards and supervisors as defined by the Act.

A.      **The Issue**

The sole issue to be determined in this case is whether the Board has jurisdiction over the Employer.  The Employer contends that the Board lacks jurisdiction over it because as a Chapter 12 and/or Chapter 13 Standing Trustee, it is not an employer within the meaning of the Act, but rather an administrative unit of the Federal government.

For the reasons set forth below, I find merit in the Employer's contention. The Board has held that the political subdivision exemption in Section 2(2) of the Act encompasses entities which are either created directly by the State, or administered by individuals who are responsible to public officials or to the general public, and I find that

---

[3]The record disclosed that in calendar year 2003, the Employer received revenues in excess of 2 million dollars.  In addition it was shown that the Employer had more than a *de minimis* amount in interstate commerce.

2

the Employer herein is administered by an individual who is responsible to the United States Trustee, a public official.

## B.    Background

### 1.    Overview of the United States Trustee System

The United States Trustee System, originally established in 1978 as a pilot program in only a few states, was permanently adopted in 1986.[4]  The system was created to lodge administrative responsibility for bankruptcy trustees outside of the judiciary.  The U.S. Trustee System is a division of the Department of Justice and is comprised of three organizational units: 1) The Executive Office of the United States Trustees; 2) regional offices; and 3) field offices[5]. The Executive Office is responsible for setting policy, overseeing the substantive operations of the system, and handling administrative functions[6].  The 21 regional offices are each headed by a U.S. Trustee appointed by the U.S. Attorney General for a five-year term.

The U.S. Trustee is authorized to appoint standing trustees pursuant to Section 586 (b) of the Bankruptcy Code, which provides that:

> "If the number of cases under Chapter 12 and/or 13 of title 11 commenced in a particular region so warrants, the United States ·Trustee for such region may, subject to the approval of the Attorney General, appoint one or more individuals to serve as standing trustee, or designate one or more assistant United States trustee to serve in cases under such chapter. The United States trustee for such region shall supervise any such individuals appointed as standing trustee in the performance of the duties of standing trustee."

### 2.    The Standing Trustees

Chapter 12 and Chapter 13 standing trustees perform multiple duties critical to the administration of Chapter 12 and 13 cases.  The standing trustee supervises the debtor and is heard on questions of property valuation, plan confirmation, plan modification and ensures that the debtor begins making timely payments.   The Bankruptcy Code direct Chapter 12 and Chapter 13 standing trustees to make

---

[4]Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, Pub. L. No. 99-554, 100 Stat. 3088 (codified as amended at 28 U.S. C. ss 581-589a (1988).

[5]There are 93 field offices headed mostly by Assistant U.S. trustees.

payments to creditors under the plan "except as otherwise provided in the plan or in the order confirming the plan".[7]

The parameters for determining the standing trustee's compensation are set forth in the Bankruptcy Code Section 586(e).  The standing trustee's compensation depends on the volume of disbursement that is generated from the funds received by the trustee, with a maximum cap,[8] which is established and revised by the U.S. Trustee.[9]  The amounts levied on the plan payments are applied in three ways.  1) They are used to pay the trustee's personal compensation; 2) pay the salaries of the trustee's staff and other overhead expenses of the trustee's office; 3) a portion of the fee goes towards the funding of the United States Trustee System Fund.

The standard of conduct for the standing trustees, including procedures for suspension[10] and termination of the assignment for future cases is included in the Code of Federal Regulations.[11]  A standing trustee's inability to administer cases may result in his removal.[12]

## C.   The Facts

### 1.   Overview of the Employer's Operations

José Carrión is one of the designated Chapter 13 and Chaptér 12 standing trustees for the Commonwealth of Puerto Rico and the U.S. Virgin Islands.[13]  Carrión was first appointed by the United States Trustee as a Chapter 13 standing trustee on October 1, 1998, and since then, his appointment has been reissued every year.[14]  In addition, he was appointed as a Chapter 12 standing trustee in mid 2002.

---

[6]A number of courts agree that the Executive Office of the U.S. Trustee is an administrative agency. See, for example, In Re Gigdeon, 158 BR 528, 530 (SDFla.1993), holding that when the US Trustee operates as an administrative arm of the bankruptcy court rather than as a party in interest, it is an administrative agency.

[7]Handbook, page 3-1.

[8]An amount not to exceed the highest annual rate of basic pay in effect for level V of the Executive Schedule.

[9]Every year an Order Fixing Fee and Compensation is signed by the person in charge of the United States Trustee Program.

[10]This may occur, for example, if a trustee demonstrates a failure to properly administer cases, or refuses to cooperate with the United States Trustee or to adhere to applicable policies.

[11]28 C.F. R. Sections 58.4 and 58.6.

[12]11 U.S.C. Section 324 authorizes the United States trustee to file a motion for removal.

[13]The Commonwealth of Puerto Rico and the U.S. Virgin Islands are included in Region 21.  Region 21 also includes Alabama, Florida, and Georgia.

[14]His appointment has been reissued every October for a twelve-month period ending on September 30, which is the end of the fiscal year for purposes of the operations involved.

Currently, the caseload assigned to Carrión to administer as Chapter 13 and Chapter 12 standing trustee is of approximately 13,000 cases.  His office is located in San Juan, Puerto Rico.  It is undisputed that Carrión is not an employee of the United States Government.

Carrión's compensation and his office operational expenses are paid from the revenues collected from debtors as disbursement fees in Chapter 12 and Chapter 13 plans. The percentage fee authorized for the year 2003 was 8%.[15]  During the year 2003, Carrión collected revenues in excess of 2 million dollars ($2,000,000) as disbursement fees.[16]

### 2.    The Standing Trustee's Employees

Carrión's office is staffed with approximately 37 employees.  These employees are paid directly by Carrión's office with the funds collected as disbursements fees.[17] Carrión's employees are hired directly by his office and are not federal employees. Although Carrión has discretion to recommend specific salaries for his employees, this discretion is to be exercised within the grading range established in a labor market study for a particular job.[18]  Carrión can also create a job position within his office structure, but it has to be submitted to the U.S. Trustee's Office for approval together with his annual budget. Thus, Carrión has to submit his office annual operational budget, which includes employees' compensation, and yearly salary increases, and employees' job descriptions to the U.S. Trustee, for evaluation and approval.    In addition, Carrión's operations are audited once a year by an independent accounting firm selected by the U.S. Trustee.

---

[15]An Order fixing compensation and percentage fees is issued every year.

[16]According to the Annual Audit Report, during the year 2003, Carrión, as Chapter 13 standing trustee, collected $2,522,685 in disbursement fees.

[17]In order to process its office payroll, Carrión maintains a contract with a private company identified as either ADP or EDT.  The payroll information is gathered by this company electronically once a week.  Employees' payroll information is verified internally by the office supervisors. The office payroll is not submitted to the U.S. Trustee or the Justice Department for approval.

[18]The U.S. Trustee requires each office in the Region to generate a labor market study or salary study.  The purpose of the study is to evaluate each job description and based upon different factors, such as the complexity and type of performance, to establish a salary grading for each position. The study is conducted by an external consulting firm, which is contracted to perform the same study in each of the chapter 13 standing trustees offices included under Region 21.

In the operation of his office, Carrión has to follow the guidelines established by the Office of the United States Trustee Program of the Department of Justice, known as the Chapter 13, Standing Trustee Handbook.

While unclear from the record, it appears that the standing trustee's office as such does not pay State or Federal taxes, nor Municipal Real Estate Property Taxes, but Carrión does make Social Security payments for his employees.

## D.    Legal Analysis

Section 2(2) of the Act excludes from the definition of employer under the Act "the United States or any wholly owned Government corporation or any Federal Reserve Bank, or any state or political subdivision thereof."

In order to determine whether entities are political subdivisions exempt from the Act, the Board uses a two–prong test established  in NLRB v. Natural Gas Utility District of Hawkins County, 402 U.S. 600 (1971). Under that test, political subdivisions are entities that are either (1) created directly by the State, so as to constitute departments or administrative arms of the Government, or 2) administered by individuals who are responsible to public officials or to the general electorate.

In Hawkins County, the Supreme Court found that a gas utility district was within the second prong of the Board's test, as it was administered by individuals who were responsible to public officials, in large part because the commissioners administering the district were appointed by an elected county judge and also were subject to removal under the state's General Ouster Law.

In its decision in University of Vermont, 297 NLRB 291 (1989), the Board found the employer to be exempt from the Board's jurisdiction as a political subdivision, even though the Board of Trustees was found to operate in an autonomous manner, with independent authority to establish personnel policies, wages, benefits and to enter into collective bargaining agreements and to ratify such agreements without the approval of the legislature.  Applying the test in Hawkins County, the Board noted that because 12 of the 13 trustees were selected by the State, either by legislation or by gubernatorial appointment, the state clearly exercised control over the University Board of Directors. Id 295.  In Research Foundation of the City of New York, 337 NLRB 965, 968 (2002), however, the Board did not find the employer to be exempt from jurisdiction because

6

the appointment and removal of the members of the Board of Directors was not governed by any statutory provision, but rather by the Employer's by-laws, which were enacted by its Board of Directors. The Board concluded that the 17 members of the Board of Trustees were not responsible to public officials or the general electorate. The Board, following Hawkins County, reiterated that in order to determine whether an entity is "administered" by individuals responsible to public officials or to the general electorate, the Board considers whether the individuals are appointed, and subject to removal, by public officials.

This requirement is consistently applied throughout the Board's decisions. In Cape Girardeau Care Center, Inc., 278 NLRB 1018, 1020 (1986), the Board did not exempt the employer from its jurisdiction. Of significance to the Board was the fact that the county neither had the authority to appoint the Board of Directors nor to remove any Board member. Rather the incumbent Board actually selected their successors subject to the county approval. The Board determined that there was no "direct personal accountability " to the county's public officials and any approval of the board members was simply ministerial. Also, in St. Paul Ramsey Medical Center, 291 NLRB 755 (1988), the Board found that the employer was not an administrative arm of the Government. In finding that the employer failed the second prong test of Hawkins County, the Board noted that there was no requirement that the employer's Board of Directors be government officials or "appointed" by government officials and there was no provision for the removal of its Board members by any government official. Accordingly, the Board concluded that the employer was not an exempt political. Subdivision as it was neither an administrative arm of the Government nor was it administered by individuals who were responsible to public officials.

In Oklahoma Zoological Trust, 325 NLRB 171 (1997), in reaching its conclusion that the employer was a political subdivision exempt from the Act, the Board noted that three of the nine trustees were public officials, and the remaining six trustees were selected by the mayor and confirmed by the city council. Removal of the trustees was regulated by statute, which provided that trustees were subject to removal from office by the district court having jurisdiction. Removal was for cause, including incompetence, neglect of duty, or malfeasance in office.

In the instant case, the Employer is administered by an individual who as standing trustee has been appointed pursuant to Section 586 (b) of the Bankruptcy Code by the U.S. Trustee, with the approval of the U.S. Attorney General. Although this section is silent as to the power of removal, it has been held that the power of removal of the U.S. Trustee is implicit in the power of appointment. Thus, in Barbara W. Richman, 48 F. 3d 1139 (1995), the Court of Appeals for the 10th Circuit dismissed a claim by a "removed " standing trustee who alleged, among others, that Section 324 of the Bankruptcy Code[19], denied the U.S. Trustee the power of removal and placed sole authority to remove in the hands of the District Court. The Court concluded that generally the power of removal is implicit in the power of appointment unless the appointment carries with it a definite term of office or a statutory constitutional provision limits the removal power.

In the instant case, the standing trustee not only is appointed by the U.S. Trustee with the approval of the U.S. Attorney General, and subject to removal at the instance of the U.S. Trustee at any time, and/or by a U.S. District Court for cause, but other factors which reflect the level of accountability of the standing trustee toward the U.S. Trustee, are present here: 1) the Employer's finances are under strict supervision of the U.S. Trustee; 2) the Employer's operational budget has to be submitted to the U. S. Trustee for approval; 3) the Employer's books and accounts are audited every year by the U. S. Trustee; 4) a percent of the disbursement fees collected by the Employer goes to the support of the U.S. Trustee System; 5) in the operation of his office, the Employer has to follow the guidelines for Chapter 13 Standing Trustees; 6) the standing trustee enjoys limited immunity when acting within the scope of its duties.[20]

Under these circumstances and based upon the record, I conclude that the Employer, as a standing Chapter 12 and Chapter 13 trustee, is a political subdivision

---

[19] 11 U.S.C. section 324

[20] In re Castillo, C.A. 9, (2002), 297 F. 3d 940, the Court indicated that the Chapter 13 bankruptcy trustee is a creature of the Bankruptcy Code, which enumerates specific duties, rights and powers of the bankruptcy trustee. The Court concluded that the Chapter 13 trustee was entitled to absolute quasi –judicial immunity from liability for both scheduling and noticing the confirmation hearing; both tasks were essentially one function, the judicial function of managing the bankruptcy court's docket in the resolution of disputes, and this function was unquestionably discretionary in nature. See also Bennett v. Williams, 892 F. 2d 822 (9th Cir. 1989), holding that bankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to court order.

exempt for the coverage of the Act, rather than an employer within the meaning of section 2(2) of the Act.

## ORDER

IT IS HEREBY ORDERED that the Petition filed herein be, and it hereby is dismissed.

### RIGHT TO REQUEST REVIEW

Under the provisions of Section 102.67 of the Board's Rules and Regulations, a request for review of this Decision may be filed with the National Labor Relations Board, addressed to the Executive Secretary, 1099 14th Street, NW, Washington, D.C. 20570. The Board in Washington must receive this request by **July 1, 2004**.

Dated at San Juan, Puerto Rico, this 17th day of June, 2004.



Marta M. Figueroa
Regional Director, Region 24
National Labor Relations Board
La Torre de Plaza, Suite 1002
525 F.D. Roosevelt Avenue
San Juan, Puerto Rico 00918-1002
E-mail: region24@nlrb.gov

H:\R24COM\R CASES\D&O\2004\RC-8374 - Jose Carrion Chapter13 and 12.doc

**<u>CERTIFICATE OF SERVICE</u>**

I, Irv Ackelsberg, certify that on this date, I caused a true and correct copy of the foregoing Plaintiff's Motion for Summary Judgment, Statement of Facts and Memorandum of Law in Support of his Motion for Summary Judgment to be served via CM/ECF on all counsel of record.


Dated: July 1, 2025                                     /s/ Irv Ackelsberg
                                                        Irv Ackelsberg